**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
MARK NESSELSON M.D.

|  |  |
|---|---|
| Plaintiff, | Case No.: |
|  | **VERIFIED** |
|  | **COMPLAINT FOR A** |
| -against- | **PRELIMINARY INJUNCTION** |
|  | **PURSUANAT TO FRCP 65** |
|  | **PERMANENT INJUNCTION** |
| James McDonald MD in his official | **PURSUANT TO 42 USC §1983** |
| capacity as Commissioner of NYS | **AND DECLARATORY** |
| Department of Health; Shelly Wang Bandago, | **RELIEF PURSUANT TO** |
| in her official capacity as Director of | **28 USC Sec. 2201 et.seq.** |
| New York State Office of Professional |  |
| Medical Conduct. |  |

Defendants.
----------------------------------------------------------------------X

COMES NOW the Plaintiff by his undersigned attorneys and complaining against the

defendants sets forth as follows:

## IDENTITY OF THE PARTIES

1.      Plaintiff Mark Nesselson MD ("hereinafter "Plaintiff" or "Dr. Nesselson" is and at

all of the relevant times hereinabove and hereinafter was a physician licensed to practice medicine

in the State of New York. He possesses an unencumbered and unrestricted license to practice

medicine  number 165950 issued on April 18, 1986. His practice is limited to pediatrics. At all of

the times hereinabove and hereinafter mentioned, Plaintiff maintained and still maintains a

principal place of business at 146 W 95th St New York, NY 10025.

2.      At all of the relevant times hereinabove and hereinafter mentioned, the Defendant

James McDonald MD ("McDonald") was and still is the Commissioner, appointed state official

and head executive officer of  the  New York Department of Health ("DOH").

3.      At all of the times hereinabove and hereinafter mentioned  McDonald maintained

and still maintains a principal place of business at NYS Department of Health, Corning Tower, 24th Floor, Albany, NY 12237 and in the principal regional office of the DOH located at 90 Church Street 4th Floor, New York NY 10007 in the county and City of New York.

4.    Defendant McDonald is sued herein in his official capacity because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a temporary injunction in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourteenth Amendments; (b) prospective permanent injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint aimed at enjoining defendants' prospective violations of Plaintiff's constitutional rights safeguarded by the Fourteenth Amendment; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the defendants state officials, their agents, servants and assigns as set forth in this Complaint.

5.    The defendant Shelly Wang Bandago (Hereinafter "OPMC Director" or "Director") is and at all of the relevant times hereinabove and hereinafter mentioned was the director of the New York State Office of Professional Medical Conduct ("OPMC") and has a business service address c/o the New York State Department of Health, OPMC 150 Broadway, Suite 355, Albany, NY 12204-27, Albany, NY 12237 and in the principal regional office of the DOH located at 90 Church Street 4th Floor, New York NY 10007 in the county and City of New York.

6.    The defendant Bandago is sued herein in his official capacity because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a temporary injunction in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the

Fourteenth Amendments; (b) prospective permanent injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint aimed at enjoining defendants' prospective violations of Plaintiff's constitutional rights safeguarded by the Fourteenth Amendment; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the defendants  state officials, their agents, servants and assigns as set forth in this Complaint.

**FACTUAL BACKGROUND**

**(i)     Introduction**

7.      In this complaint the following references shall apply:

(a)      The defendant James McDonald MD shall be referred hereinafter as the "Commissioner".

(b)      The Director of the NYS Department of Health, Joseph Giovannetti, a non-party to this action  shall be referred hereinafter as "Giovannetti."

(c)      The Commissioner and Giovannetti shall be referred to hereinafter collectively as "state officials".

(d)      The director of the New York City Department of Health and Mental Hygiene, ("DHMH"), Michelle Morse, the assistant commissioner Bindi Crouch and the DHMH officials in charge of processing application for access, as well as their predecessor, employees servants and assigns to the New York City Immunization registry ("CIR") shall be referred to hereinafter collectively as "City Officials".

(e)      The Office of Professional medical Conduct shall be referred to hereinafter as "OPMC")

(f)     The defendant Shelly Bandago, who is the OPMC director shall be referred hereinafter as "OPMC Director" .

(g)     The New York City Immunization Registry which was established by PHL Sec. 2168 shall be referred hereinafter as "CIR".

8.     The focus of this action is on defendants' conduct in conspiring with each other  and with the other state and City officials to continuously and perpetually violate Plaintiff's due process rights  by doing the follows: (a)   creating an artificial appearance of professional medical misconduct through the creation of a legal fiction that where the defendants themselves are participating in depriving the Plaintiff of his property interest in the access to the CIR and as a result of the same conduct the Plaintiff is unable to report vaccinations, according to the defendants, the city and state officials the Plaintiff engages in vaccine fraud and a willful violation of the reporting requirements of PHL Sec. 2168; (b) From November 2007 through April 2014 the defendants gave specific directives to the Plaintiff that his inability to report vaccinations to the New York City Immunization System ("CIR") does not amount to any professional misconduct and then they are using  the New York investigative process of PHL Sec. 230 to harass the Plaintiff and compound the other  New York City and New York state officials' continued and perpetual violations of Plaintiff's due process rights.

**(ii)     Relevant facts - the interrelationship between the defendants herein;**

9.     The Commissioner is the head of the New York State Department of Health ("DOH") and the highest official in the Department.

10.     Within the DOH there are sub agencies which are created by the Commissioner or by the legislature.

11.    The Office of Professional Medical Conduct ("OPMC") is a sub agency of the DOH which was created by the legislature pursuant t0 Public health Law ("PHL") Sec. 230 is headed by the director, defendant Bandgo. The Commissioner is Bandago's supervisor and boss. The Commissioner is ultimately responsible for the actions omission and operations of director Bandago and of employees and staff of the OPMC.

12.    The OPMC and director Bandago are tasked by the legislature with the investigation and prosecution of professional medical conduct of physicians licensed within the state of New York. See PHL 230.

13.    Although the functions of Commissioner and the OPMC director seem to intertwine, when it comes to enforcement of statutory provisions related to the practice of medicine their functions are markedly different.  Their enforcement, prosecutorial and investigative powers stem from two different statutory statutes.

14.     The Commissioner derives his powers from PHL Sec. 12-a. He has the powers to investigate general violations of the Public Health Law while such violations are prosecuted by the Office of the Attorney General. In such proceedings involving the prosecution of violations of the Public Health Law the Commissioner sits as an adjudicator and he is the ultimate arbiter of the outcome. See PHL Sec. 12-a.

15.    Moreover, the Commissioner investigates and adjudicates violations of the public health law. See PHL Sec. 12-a.

16.    All purported violations of the public health law have to be adjudicated in accordance with the minimum due process requirements of the Fourteenth Amendment which include notice and opportunity to be heard as well as in accordance  with the formalities of PHL Sec. 12-a which include and exceed the minimum due process requirements of the Fourteenth

Amendment.

17.    The Commissioner is not authorized to take official state action against any person based on alleged violations of public health law by using administrative fiat in the form of indefinite holds on applications to the centralized vaccination database of PHL Sec. 2168.

18.    The Commissioner does not investigate or prosecute or hear or determine issues related to medical misconduct as specifically defined by Education Law Sec. 6530.

19.    Issues related to medical misconduct as defined Education Law Sec. 6530 are investigated and prosecuted by the Director of the OPMC and adjudicated and formally decided by members of the New York Board of Professional Medical Conduct. Therefore the OPMC director derives her powers from PHL Sec. 230.

20.    The OPMC director  does not investigate or prosecute violations of the PHL unless they pertain to medical conduct or unless a licensee willfully or with gross negligence violated any federal state or local law pertaining to the practice of medicine. See Education Law Sec. 6530(16).

21.    The Commissioner is the ultimate supervisor and arbiter of the actions of the OPMC director and the actual "boss" of the OPMC director.

22.    The only authority which the legislature conferred upon the commissioner in direct medical conduct cases which fall under the provisions of PHL Sec. 230 are as follows: The Commissioner appoints the members of the BPMC - PHL Sec. 230(1); the Commissioner pays statutory fees for service to the members of the BPMC (PHL Sec. 230(2 and 3); the Commissioner designates an administrative officer to preside over formal hearings (PHL 230(10)(a)(iv); the Commissioner can take summary action against a licensee and suspend the license in certain cases provided under including conduct which presents an imminent danger to the public, subject to the due process provisions of this statute PHL Sec. 230(12).

> **(iii)    The purported violations of the law which the defendants are supposedly investigating do not exist and the defendants have <u>actual knowledge of the same</u>.**

23.    Public Health Law ("PHL") Sec. 230(10)(a)(iii)(provides that before the Director decides whether to file formal charges against a licensee, the Director must provide Dr. Nesselson with an opportunity to participate in an interview with the OPMC staff in order to respond to questions which the OPMC and the Board of Professional Conduct may have with respect to particularly identified issues.

24.    Providing such opportunity for an interview is a due process pre requisite step to the filing of formal charges. See PHL Sec. 230(10)(a)(iii).

25.    The chronological statement of facts accounting for how the defendants got to and went so far in the investigative process as issuing the letter of March 4, 2025 and actually scheduling an interview with actual knowledge that no professional misconduct exists  will be discussed below. However, the bad faith investigation and the use of the disciplinary investigative process by the defendants to harass the Plaintiff and to part take in Commissioner's artificially created conspiracy to violate Plaintiff's due process rights  will be addressed upfront.

26.    According to their letter of March 4, 2025, EX A hereto which was issued purportedly written in accordance with the mandates of Public Health Law ("PHL") Sec. 230(10)(a)(iii)(A), the defendants identified the following  purported medical misconduct which they sought to question the Plaintiff on during the statutory interview:

The issues under investigation involve your care and treatment of the patients listed below from 2009 to present. The discussion will include the following: the ordering, preparation,   administration, billing, and/or documentation of vaccines administered to these patients; the reporting of these vaccines to, and your participation in, the New York Citywide Immunization Registry (CIR) as well as the New York State Student Identification System (NYSSIS); your evaluation of patients for immunization exemptions and/or contraindications as well as your issuance of exemption letters; and discussions you may have had with the patients' parents or guardians. The letter then

identifies the names of 20 patients (redacted in the annexed exhibit). See Doc 1-3 EX C hereto.

The discussion will also include the circumstances surrounding your BPMC Board Order #07-250 imposed on 11/21/2007 and modified on 04/13/2011.

27.     None of the issues identified by the defendants are applicable to Dr. Nesselson in the context of professional misconduct as defined by Law Sec. 6530

28.     By letter dated November 22, 2025, EX B hereto the Plaintiff responded to defendants' offer of an interview.

29.     As reason for the rejection the plaintiff invoked the pending litigation against the Commissioner of the New York State department of health ("DOH") in *Nesselson v. McDonald* Case No. 1:25-cv-04464 JLR (hereinafter "Nesselson 1") the substance of which will be discussed below.

30.     However in accordance with 230(10)(a)(iii), Dr Nesselson opted to submit a written statement explaining to the defendants why none of the disclosed subject matters in the March 4, 2025 state any conduct which comes to the level of professional medical conduct defined in Education Law Sec. 6530, and how most of the issues identified in the March 5, 2025 were either disposed of by Defendants' own past affirmative and representations made to the Plaintiff during the 6 years of supervised probation which they themselves imposed upon the Plaintiff.

31.     The March 4 letter - EX A identifies the names of 20 specific patients with respect to whom the request for an interview and the identifies issues pertain. The investigations therefore specific and limited to these patients as per New York law requirements.

32.      The first identified issue is the ordering, preparation, administration and billing and/or documentation of vaccines administered to these patients from 2009 through March 4, 2025.

33.     The defendants already obtained from the Plaintiff on request the 20 records which

they are purporting to investigate.

34.    The Plaintiff has again attached to his response the medical records of each patient identified in the March 4, 2025 letter. The attachments are omitted from this submission. He identified the entries in each medical record that supported the vaccinations as well as, without exception each and every certificate of vaccination filled out in accordance with PHL Sec. 2164 and Commissioner's own regulation 10 NYCRR Sec. 66- where applicable on NYC DHMH forms and in three instances on Connecticut school forms, as mandated by PHL Sec. 2164(5) and by regulation 10 NYCRR 66-1.6. This information actually appears from the face of the records.

35.    The next issue identified by the OPMC defendants herein exemplifies the use of the disciplinary investigative system for the purposes of harassment as it has no semblance of relevancy to any issues of professional medical misconduct which are defined in Education law 6530.

36.     The issue is identified as a discussion of "the reporting of these vaccines to, and your participation in, the New York Citywide Immunization Registry (CIR) as well as the New York State Student Identification System (NYSSIS).

37.    For starters, the New York State Student Identification System is established by New York Education Law § 305(22), which grants the Commissioner of Education authority to create and implement a statewide system of unique student identification numbers. The statute mandates that all students in both public and nonpublic schools within New York State be assigned unique identification numbers for student tracking and state reporting purposes, with students retaining these numbers until age of 21.

38.    The NYSSIS therefore has no relevancy to vaccination whatsoever. If the defendants contend that this was a bona fide identification and disclosure of the issues to be

discussed during the interview as mandated by PHL Sec. 230(10)(a)(iii)(A), it is incomprehensible why they would like to talk to the Plaintiff about his participation in a program which has nothing to do with the practice of medicine and does not impose any statutory duties upon the Plaintiff.

39.    Second is the identification of the subject matter of the reporting of the vaccines administered to the 20 patients, and participation of Dr. Nesselson  in, the New York Citywide Immunization Registry (CIR).

40.    The defendants know and should have known that participation in and reporting of vaccinations to PHL Sec. 2168 is contingent in this case upon the City officials giving access and sign in credentials to the Plaintiff for the purposes of accessing the CIR.

41.    The defendants also have first-hand knowledge that the reason why Dr. Nesselson's reports are missing is because the City officials have systematically been obstructing Dr. Nesselson's access to NYCIR since 2006 by simply ignoring his applications for access to the CIR and failing to communicate with him regarding their status. This matter is part of the Nesselson 1 action against said defendants.

42.    The defendants have actual knowledge that during the probation period of the disciplinary orders issued by the Board of Professional medical Conduct, first in November 2007 and then again in April of 2011 (EX D and E hereto) the lack of access to the CIR was an issue caused by the City Officials back in that time simply because  the Plaintiff had to inform them of the same. The probation terms of both disciplinary orders were enforced by the OPMC Director himself at the time according to the Order terms, through OPMC probation officers.

43.    Dr Nesselson applied for access to the CIR in 2006 as soon as the reporting statute PHL 2168 came into effect because he was under investigation by the OPMC regarding the administration of vaccination to two patients.

44.     However, in 2006 and then again after another application was submitted by Dr. Nesselson in February 2024  (EX F hereto) the city officials simply failed to process his application and were not communicating with the Plaintiff regarding the status of the same.  Nor did they ever provide credentials to the Plaintiff for access to the CIR.

45.     For a period of six years between  November 2007 and April 2014, so long as he was on disciplinary probation (EX D and E hereto) Dr. Nesselson had to report to the OPMC Director  his inability to comply with the reporting requirements of PHL 2168 and explain why he could not report to the NYS centralized database established by the legislature since December 1, 2006. He was constrained to report this issue to the OPMC probation officers  simply because the terms of the probation impose a condition that he had to comply with all the statutes and the laws applicable to the practice of medicine.

46.     Probation officers from the OPMC as well as the appointed probation monitor affirmatively advised the Plaintiff in two separate instances - (one at the beginning period of the probation of the 2007 order which ended in November 2010 and second time during the second probation period of the November 2011 Order which ended in April 2014 (EX D and E hereto), that so long as the Plaintiff documented the vaccinations in the medical records and provided written certifications of vaccinations in the form mandated by PHL Sec. 2164(5) and specified in 10 NYCRR Sec. 22-1.6, then the OPMC was not going to find him in violation of the terms of the probation of both orders. They also told him to follow this practice in the future past the termination of the probation terms.

47.     The probation terms were successfully completed by April 2014 without any incident and without any action or warning of any type from the OPMC regarding the reporting issue of PHL Sec. 2168.

48.     The defendants also knew and should have known form all of the filings in Nesselson 1 (which pre dated the OPMC letter of March 4, 2025 and in which case the Commissioner is a named party) that since March 2024, the Commissioner himself became an active participant along with the City officials in the scheme to deprive the Plaintiff of due process by obstructing his CIR access prospectively and in perpetuity by using administrative fiat and directives given to schools to reject Dr. Nesselson's paper vaccination certificates without due process.

49.     Next, the defendants further disclose in the March 5, 2025 letter EX C hereto that one of the subject matters to be discussed at the interview is Dr Nesselson's evaluation of patients for immunization exemptions and/or contraindications as well as your issuance of exemption letters.

50.     The plaintiff disclosed in full to the defendants the medical records of each and every one of the 20 patients named in the disclosure letter of March 4, 2025 . Without exception all the medical records include all of the vaccination records and certifications issued pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6.See EX B hereto less attachments. Therefore from the face of the medical records, defendants knew and should have known that none of the 20 patients were evaluated for vaccine exemption nor were they ever provided with vaccine exemptions by Dr. Nesselson.

51.     The defendants' notice to the Plaintiff that they wish to discuss a non-existing issue of vaccine exemptions and vaccine exemption evaluation exemplifies their use of the investigative process for the purposes of systematic harassment and for the further purposes of giving credence to the otherwise unconstitutional actions of the Commissioner and his employees pending sub judice before Judge Jennifer Rachon in Nesselson 1.

52.     Based upon public documents, the Plaintiff surmises that the demand for

information regarding vaccine exemptions and evaluations for the purposes of issuing vaccine exemptions was erroneously copied from a boilerplate letter belonging to a group of physicians who did provide vaccine exemptions to their patients and were then concertedly targeted by the state machinery with accusations of fraudulent conduct.

53.    The OPMC investigative and prosecutorial process is now scrutinized by members of Congress and the US Department of Justice which has been asked to investigate the New York officials for constitutional violations. EX G  hereto.

54.    In a recent letter dated February 6, 2026 - EX G  hereto, members of Congress have asked the US Justice Department to investigate the state officials' actions against physicians in this state who were falsely accused of falsifying records and cut off from vaccinating their patients in the same manner as the Plaintiff has been since March 2024 and July, 2024.

55.    Namely, the letter accuses the state officials from using their same public website as they did and are continuing to do in Nesselson 1 to publicly accuse physicians who provided vaccine records of falsifying records, namely vaccine exemptions,  and directing school districts to reject their paper vaccine certificates while blocking their access to the centralized vaccine database through a public website EX G hereto. That public web site is the subject matter of a constitutional challenge from the Plaintiff in Nesselson 1.

56.    Next, the March 4, 2025 letter states that the state officials wished to ask the Plaintiff about non-descript discussions on undefined matters which he may have had with the patient's parents or guardians since 2009.

57.    The identification of such an open non-descript issue which involves juggling Plaintiff's memory since 2009  over non-descript conversation is also a part and parcel of the use of the  investigative process for the purposes of systemic harassment by the Commissioner and

now the OPMC Director. The nonspecific non-descript issue is not an issue at all and it does not comport with the notice requirements of PHL Sec, 230(10)(a)(iii)(A).

58.     Finally, the defendants further identified "circumstances surrounding Dr. Nesselson's Board order 07-250 of November 21, 2007 and the modification Order of April 13, 2011" as a subject matter for discussions.

59.     Again, wanting to revisit the circumstances of the now defunct orders which contained specific probation terms which were satisfied in full respectively on November 21, 20210 and April 13 2014 is not a bona fide investigation int0 any subsequent conduct of the plaintiff because both orders expired by their own terms.

60.     Ironically it was during the probation terms of those specific orders that the defendants did acquire specific knowledge and facts regarding the central issue in the litigation pending sub judice and  in this case which was the artificial creation of the "violation" of PHL Sec. 2168 through the denial of access to the CIR by administrative fiat.

61.     PHL Sec. 230(1)(a)(i)(B) specifically charges defendant Bandago with the mandatory task  of conducting a preliminary review of every report made to the department pursuant to the relevant statutory provisions to determine "if such report reasonably appears to reflect physician conduct warranting further investigation pursuant to this subparagraph."

62.     The duty to conduct such a preliminary review prior to jumping on the band wagon of further violating Plaintiff's due process rights by participating in the staged unconstitutional scenario devised by  the state and city actors as discussed below is mandatory as reflected by the word "shall". The OPMC director utterly failed to fulfil her mandatory task.

63.     Had she completed this task the Director would have ascertained that no professional medical conduct as described by Education law Sec. 6530 occurred here or ever

existed. There cannot be a violation of PHL Sec. 2168 where the defendants themselves are continuing to create the constriction to the CIR access as stated below.

64.     The OPMC's grounds for investigation identified in the letter of March 4, 2025 EX A hereto  can by definition and by process of elimination  only call into consideration during the preliminary statutory inquiry the provisions of Education Law Sec. 6530(16). That's statute defined professional misconduct as " A willful or grossly negligent failure to comply with substantial provisions of federal, state, or local laws, rules, or regulations governing the practice of medicine."

65.     With that definition in mind, even the cursory review of the OPMC letter of March 4, 2025 EX F  hereto and of Plaintiff's response to the same EX B hereto reveals that objectively and as a matter of law no grounds exist under Education Law Sec. 6530(16) for the continued investigation conducted by the defendants herein and for any other prospective disciplinary action proposed to be taken in the future by the defendants herein against the Plaintiff

66.     Such an examination also reveals that the investigative powers of the OPMC director are purposely used to further the false accusations and agenda of the Commissioner made against the Plaintiff in officials' internet posts EX G hereto.

67.     For the above referenced reasons, the Defendants' are purportedly investigating professional misconduct issues which by definition do not exist as well as other matters which are not substantively relevant to Dr. Nesselson at all.

**(iv)    Chronological facts regarding the defendants' participation
in the Commissioner's conspiracy to prospectively violate
Plaintiff's due process rights and facts regarding the Commissioner's
<u>violations of Plaintiff's due process rights.</u>**

68.     As discussed above, in 2006 at the beginning of the effective period of the vaccine reporting statute PHL Sec. 2168, the Plaintiff applied for access to the CIR database with the City officials. For two decades the city officials have obstructed Plaintiff's access to the CIR by simply

ignoring his application, not processing it and refusing to return Plaintiff's calls and ignoring his attempts at communicating with the City officials regarding the status of his application.

69.    On August 16, 2006 the New York Legislature enacted  PHL Sec. 2168 titled. Statewide immunization information system. The main purpose for the enactment of the statute is stated in PHL Sec. 2168(1) through (d). In a nutshell the purpose is to (a) collect reports of immunizations and thus reduce the incidence of illness, disability and death due to vaccine preventable diseases...(b) establish the public health infrastructure necessary to obtain, collect, preserve, and disclose information relating to vaccine preventable disease as it may promote the health and well-being of all children in this state.

70.    The statute PHL 2168(8) imposes a mandatory obligation on the Plaintiff to report all vaccinations administered by him to the centralized database for all individuals under 19 years of age.

71.    The statute also imposes ministerial duties upon the New York DOH Commissioner and the NYC DHMH Commissioner to facilitate access to the centralized reporting data base to all mandatory reporting individuals which includes the Plaintiff.

72.    A separate and distinct statute PHL Sec. 2164 governs the mandatory vaccination requirements in New York for children of school age.

72.    In relevant part the statute charges the parents with their children's vaccinations and it empowers school officials to exclude children from school attendance if they do not produce proof of vaccination.

74.    PHL Sec. 2164(5) charges every healthcare practitioner who administers vaccinations with the duty to issue a paper certificate of vaccination for each pediatric patient to whom the vaccines are administered.  It then tasks the Commissioner with enacting regulations to

carry out the mandate of the legislature codified in PHL Sec. 2164.

75.    In accordance with the mandate of PHL Sec 2164, The Commissioner shed light specifically on what the vaccination certification has to encompass in order to constitute valid proof of vaccination by enacting 10 NYCRR Sec. 66-1.6 which provides in relevant part follows (broken down below):

> **The certificate of immunization required in section 66-1.3(a) of this Subpart shall be prepared and signed by a health practitioner licensed in New York State and shall specify the products administered and the dates of administration**. (Emphasis supplied).

76.    This is exactly the certificate of immunization that Dr. Nesselson always supplied to his pediatric patient's guardians and to the schools which they attended.  It is the primary and the preferred proof of vaccinations identified in the regulation.

77.    In accordance with this regulation the NYC officials developed a standard form titled "Child and Adolescent Health Examination Form" which ensures uniform reporting of vaccinations as mandated by the regulation. These are the forms which Dr. Nesselson always submitted to the NYC schools as proof of vaccinations without any phan phare or objections or incident and with the guidance and blessing of the OPMC officials.

78.    Alternative forms of certifications provided by the Commissioner's regulation are:

(a)    a document which "may also show physician, nurse practitioner, or physician assistant-verified history of varicella disease and/or positive serologic tests for measles, mumps, rubella, varicella, and/or hepatitis B and/or laboratory confirmation of disease for measles, mumps, rubella and/or varicella.

(b)    Certificates of immunization issued prior to September 1, 2019 may also show positive serologic tests for all three serotypes of poliomyelitis contained in the polio vaccines.

(c)    A record issued by NYSIIS, the CIR, an official immunization registry from another state, an electronic health record, and/or an official record from a foreign nation may be accepted as a certificate of immunization without a health practitioner's signature.

79.    In short, NYSIIS and CIR records are neither the exclusive proof of vaccinations nor certificates of vaccination required by PHL Sec. 2164(5) in order to accept the pediatric patient into the school attendance program. They are an alternative method of providing vaccine certifications.

80.    On their face, neither the regulation, nor the mandatory vaccination statute PHL Sec. 2164, nor the mandatory vaccine reporting statute PHL Sec. 2168  invalidate the paper certification issued by the healthcare practitioners where there are no reports of the vaccinations made to the NYSIIS or the CIR database. Nor do any of the foregoing statutes nor any other statutes at all empower either school officials or the Commissioner to invalidate bona fide vaccinations or paper certification issued by Dr. Nesselson or by any other healthcare practitioner, nor could it.

81.    The stated purpose of the legislature in PHL Sec. 2164 and 2168 is not to vest self-important power hungry school nurses and school officials with unfettered discretion to question physician and the legitimacy of certificates of vaccinations because of their subjective beliefs.

82.    Nor was  the stated  purpose of the same statutes to vest the commissioner or school administrators with unfettered discretionary powers to invalidate bona fide vaccinations and certificates issued pursuant PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6 because the information cannot be cross referenced with reports made to the centralized database.

83.    The stated purpose of the enactment of Sec. 2168 as stated in PHL Sec.2168(1)(a) through (d) discussed above.

84.    PHL Sec. 2168 does not vest the commissioner or school authorities with any powers to declare bona fide vaccinations and paper certifications issued pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6 as invalid because there is no correlating information in the CIR corroborating the information in the paper records.

85.    Nor does PHL Sec. 2168 or any other law  empower the Commissioner or anyone else with powers to act against  Dr. Nesselson without following the formalities of PHL Sec. 12-a and the minimum due process requirements of notice and opportunity to be heard.

86.    Nor does any law empower the City officials to simply fail to perform their duties and refuse to process an application for access to the CIR and put it on an indefinite administrative hold.

87.    No law empowers the defendants herein to investigate and prosecute as professional misconduct any violations of PHL Sec. 2168 by the Plaintiff where access to the CIR was denied continuously by the City officials administrative fiat without any reason and where the OPMC officials themselves specifically told the plaintiff that under such circumstances his inability to report vaccines to the CIR does not amount to professional misconduct or to violations of the law as set forth above.

88.    Yet that is exactly what is happening here. City  officials and state officials are acting unconstitutionally against the Plaintiff, without authority, above the law and in contravention of the very same statutes and regulations which govern their conduct and of the Fourteenth Amendment of the US Constitution.

**(iii)    The sudden so called "reports or complaints" from school nurses who took it "upon themselves" on their own to all of a sudden verify Dr. Nesselson's CIR entries and cross reference them against the paper certificates.**

89.    The mandatory vaccinations statute PHL Sec. 2164 and the certificate requirement of PHL Sec. 2164(5) has been on the books since 1966 first with just poliomyelitis then added small pox and measles in 1968, then other mandatory vaccines have been added.

90.    Since 2006, when PHL Sec. 2168 came into effect, Dr. Nesselson has been

providing the same written vaccine certificates provided for by PHL Sec. 2164(5) and 10 NYCRR

Sec. 66-1.6  under the watchful eye of the OPMC Director and staff and of the Commissioner  and

under their own directives and without being able to report to the CIR .

91.    Subsequent to the commencement of the first disciplinary period on November

2007 and  given the OPMC Director's staff's instructions to Dr. Nesselson back in 2007 and

subsequently in 2011, no one including the OPMC Director, the Commissioner, the City officials

or any school nurses or officials ever flagged the Plaintiff for his inability to report vaccines to the

CIR due to the City officials obstruction of access.

92.    All of a sudden in Nesselson 1, the City officials reported four cluster "reports" and

"complaints" which they received between July 2023 and May 2024. The reports stated no

violations whatsoever of any statute. Uniformly the reports initiated by school nurses who upon

information and belief acted in concert with each other, labeled the plaintiff as a healthcare

practitioner who fraudulently submitted vaccine certifications while the nurses could find no

reports correlating to the vaccinations in the CIR.

93.    However, as discussed ad nauseam above, not reporting vaccines to the CIR for

circumstances which the plaintiff cannot control (denial of access by the CIR and the state

officials) is not one and the same as fraudulently reporting vaccinations legally in accordance with

PHL Sec. 2164(5) and in the format prescribed by the Commissioner in 10 NYCRR Sec. 66-1.6.

94.    The two statutory provisions stand separate and apart and they do not cancel each

other out. The reporting of vaccinations to the to the CIR does not absolve the healthcare

practitioner to comply with PHL Sec. 2164(5) and issue vaccine certification in the substance

prescribed by 10 NYCRR Sec. 66-1.6. Failure to report vaccinations  to the CIR in accordance

with PHL Sec. 2168  and does not cancel bona fide issued certificates of vaccination in accordance

with PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6. Neither one of the statutes gives authority to the Commissioner or to school officials to cancel out paper certifications and bona fide vaccinations for failure to make reports to the CIR. Even more so, there is not and cannot be any vaccine fraud where the lack of reporting to the CIR was caused by lack of access and by defendants' own actions to stamp out Plaintiff's vaccination practices as described below.

95.    Papers submitted by the City officials in Nesselson 1 state that after receipt of the second complaint in October 2023 in December 2023 they directed staff to contact Dr. Nesselson's office and ask if he was vaccinating his pediatric patients. The response was resoundingly in the positive.

96.    Around that same time, in December 2023- January 2024 the parents of the children who were subjected to the two nurse's scrutiny were relaying to Dr. Nesselson that they were being informed by school authorities that his paper certificates issued pursuant to PHL Sec. 2164(5) were about to be rejected by the authorities and the vaccinations invalidated for lack of CIR reporting.

97.    In response, to his patients' complaints on or about February 27, 2024, Dr. Nesselson successfully submitted a new application for access to the CIR to the City officials and received confirmation of the same. EX H hereto.

98.    The application receipt - EX H hereto - directed Dr. Nesselson to contact specific telephone numbers listed therein for the status of his application and for the issuance of sign in credentials. Dr. Nesselson did so numerous times between February 2024 and November 2024 to no avail. No communications regarding the status of his application was returned by the City Officials.

99.    The Plaintiff has learnt from the City officials' submission in Nesselson 1 that between January and May 2024 they receive two additional complaint reports from two

unidentified school sources which stated the same thing like the complaints/reports from the other two school nurses.

100.    The purported "new" reports from the two additional school  nurses, were identical to the prior two in substance. Out of the blue the nurses took it upon themselves to cross referenced the paper certification issued by Dr. Nesselson to the school students with the CIR database.

101.    Low and behold, not surprisingly to the City Officials or to the defendants herein, the information was not in the CIR because the City officials knew and should have known that it was them who obstructed and continue to obstruct Plaintiff's access to the CIR and who artificially created the existing situation whereby Dr. Nesselson is plain and simple barred from complying with PHL Sec. 2168.

### (iv)    Enter the Commissioner and the OPMC Director and staff.

102.    In the City officials' papers in Nesselon 1, they acknowledged that by March 2025 they contacted the Commissioner and his staff employee Director of Investigations Joseph Giovannetti to ask them how to proceed on the same complaints.

103.    By all accounts given by the City officials and by the Commissioner and Mr. Giovanneti in Nesselson 1,  Mr. Giovannetti and employee acting at the discretion and pleasure of the commissioner  instructed the City officials to place an indefinite administrative hold on Plaintiff's February CIR access application and to do nothing, as they already have done in 2006 and since the application was submitted in February 2024.

104.    Thereafter in rapid succession of events the Commissioner and Mr. Giovannetti actively joined the City officials to prospectively deprive the Plaintiff of his property right and interest in the access to the CIR while dispensing with the due process mandates of the Fourteenth Amendment  through  the  implementation  of  an  unauthorized   and  unconstitutional  scheme

involving the internet, a public official web site and knowingly false representations made thereon in lieu of due process and the formal administrative process prescribed by PHL Sec. 12-a.

105.    Specifically, the Plaintiff has a property interest in a government benefit which is bestowed upon the Plaintiff by the legislature in order to facilitate compliance with the vaccine reporting requirements of PHL Sec. 2168. Here the government benefit in which the Plaintiff has a property interest  is access to the CIR conferred upon the Plaintiff by the legislature in PHL Sec. 2168.

106.    First, there is no question or dispute that PHL Sec. 2168 imposes a mandatory obligation on the plaintiff to report vaccinations to the CIR and provide the particular information mandated in Commissioner's regulation 10 NYCRR Sec. 66-1.2

107.    There is also no dispute that because the CIR database is electronic, access to the same as set up by the City and state officials is through sign up portals and the input of credentials by healthcare licensees into the portal is necessary in order to access the CIR.

108.    There is also no dispute that neither PHL Sec. 2168 nor any other statute provide for any such thing as an indefinite administrative hold on CIR access applications without due process.

109.    Finally there is also no dispute that the City officials' obligations to grant access to mandatory reporters to the CIR is ministerial and not discretionary. If there is a determination that a violation of PHL Sec. 2168 is in issue, the only manner in which the Commissioner is authorized to deal with it is through the formal administrative process prescribed by PHL Sec. 12-a which includes the basic due process safeguards of notice and opportunity to be heard.

110.    Notwithstanding the above the first thing the Commissioner did through Mr. Giovannetti was to order the City officials in March 2024 to place Plaintiff's application on an

indefinite administrative hold without any notice or opportunity to be heard and without any communication of this administrative decision being given to the Plaintiff. This is count number one of deprivation of Plaintiff's property interest in the CIR accompanied by a due process violation.

111.    The second thing the Commissioner did was to purport to launch an investigation into Plaintiff's purported violation of PHL Sec. 2168 and to enlist the OPMC in this scheme. The Commissioner and the OPMC director knew and should have known from prior dealings with the Plaintiff during the probation period of the orders of discipline EX A and B that no such violation exists.

112.    The investigation was kicked off in July of 2024 through an unconstitutional open ended subpoena issued by Mr. Giovannetti which violates every possible aspect of the Fourth Amendment protections applicable to administrative subpoena. The adjudication of the subpoena and of the open ended production of documents which it sought is now pending sub judice before Judge Rochon in Nesselson 1.

113.    Not to be outdone, the OPMC Director  through its staff investigator joined the Commissioner in plaintiff's harassment by kicking off  and investigation through a letter dated July 27, 2024 in which they sought records of ten specific patients. EX C hereto. The central issue of the investigation was a subject which was well known and should have been well known to the OPMC staff and Director from prior dealings. That subject is Plaintiff's inability to report vaccines to the CIR due to the City officials' obstruction of access to the database since 2006.

114.    The Director forgot to look into OPMC's director's own position and directives given in 2007 and subsequently in 2011 on Plaintiff's inability to report vaccines to the CIR which is that such inability does not amount to professional misconduct so long as the plaintiff documents

vaccinations in the medical records of the patients and provides the paper certificates in compliance with PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6.

115.    Next, the Commissioner through Mr. Giovanneti devised a process and a scheme to bypass the Fourteenth Amendment protections of notice and opportunity to be heard afforded to the plaintiff by the constitution and to completely dispense with the formal process of PHL Sec. 12-a.

116.    That scheme and process involved the  internet as well as setting up a public web site     titled     "School     Vaccination     Fraud     Awareness"     at https://health.ny.gov/prevention/immunization/schools/fraud.htm.

117.    In his first posting, the Coimmisisoner and Mr. Giovannetti misrepresented to the public and to school authorities in general that Dr. Nesselson's access to the CIR has been suspended and revoked.  The post issued a directive without any explanation that   " Paper-only records of vaccinations administered after 07/31/2024 from this provider must not be accepted.". See posting EX J hereto.

118.    The information in this posting was knowingly false. Dr. Nesselson's access to the CIR was never suspended or revoked, but it was rather obstructed through administrative fiat in lieu of formal due process and formal proceedings and a formal order from the Commissioner.

119.    In addition the directives given to school authorities in the first posting to reject paper only bona fide vaccine certifications issued by the Plaintiff to his pediatric patients because his access to the CIR was suspended or revoked amounts to official state action taken against the Plaintiff in the form of a taking of a property interest which the Plaintiff has in his professional license without due process.

120.    There is no authority or provision anywhere in either the reporting statute PHL Sec,

2168 or the mandatory vaccination statute PHL Sec. 2164 or anywhere else which empowers the Commissioner to simply take official state action through the posting on the internet site devised by the Commissioner  and simply invalidate perfectly legal certificates of vaccination provided by Dr. Nesselson to his pediatric patients pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6. At the same time the postings had the net effect of restricting Plaintiff's license to practice medicine and specifically to provide vaccinations to his patients, all without affording the Plaintiff due process and the formalities of PHL Sec 12-a.

121.    Then at a later time unknown to the Plaintiff the Commissioner changed the posting and made it even worse and committed another count of due process violation which now continues in perpetuity. See Ex J hereto.

122.    The second posting states verbatim as follows - EX J:

Public Health Law requires that any provider who administers a pediatric vaccination to a person less than nineteen years of age report the vaccination to the New York State I Immunization Information System (NYSIIS) or, in New York City, the Citywide Immunization Registry (CIR). The Department of Health may determine that any vaccination administered, or purportedly administered, in violation of Public Health Law is invalid for purposes of satisfying New York's school vaccination requirements. Each of the providers listed below is either suspended from, terminated from, or otherwise without access to NYSIIS, CIR, or both. Schools may not accept "paper-only" records of pediatric vaccinations from these providers as of dates specified below, as such vaccinations were necessarily administered in violation of Public Health Law. Schools are encouraged to check this list regularly for any updates and changes.

Mark Nesselson, MD – Is based in New York, NY and does not have access to either the Citywide Immunization Registry or the New York State Immunization Information System. Paper-only records of vaccinations administered after 07/31/2024 from this provider must not be accepted.

123.    The foregoing posting amounts not only to knowingly false statements but to formal state government action taken by the Commissioner against the Plaintiff without due process and to a flagrant prospective and perpetual violation Plaintiff's due process rights.

124.    In effect what the posting is doing is deprive the Plaintiff of his property interest in access to the CIR as well as of his property interest in medical license while at the same time it deprives him of his property interest in his unrestricted medical license by barring him from ever providing vaccination services to his pediatric patients through  formal directives given to school districts to reject Plaintiff's perfectly legal vaccine certifications issued pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6.

125.    The posting misstates the law. It necessarily misrepresents that there is a nexus between the Plaintiff's lack of access to the CIR (which was actually caused by the Commissioner himself through administrative fiat rather than through formal proceedings pursuant to PHL Sec. 12-a after affording the Plaintiff due process notice and opportunity to be heard) and the Plaintiff's perfectly legal issuance of paper certifications governed by PHL Sec 2164(5) and 10 NYCRR Sec. 66-1.6.1

126.    No such nexus exists. The obligation to report vaccinations to the CIR is separate and apart from the issuance of paper vaccinations. By commissioner's own regulation 10 NYCRR Sec. 66-1.6 a certificate of vaccination is either the primary choice of a paper record signed and dated by Dr. Nesselson and containing the information provided by the regulation or the alternative record of CIR or NYSIIS reports but not both. Absence of one does not invalidate the legality or validity of the other under any provision of the law.

127.    The Commissioner's posting departs from his own regulation without explanation thereby rendering the state action null and void.

128.    However there is nothing more disturbing than the fact that in the second posting the Commissioner misstates that because of lack of access to the CIR the Commissioner and his staff somehow made a formal determination that the vaccinations administered by Dr. Nesselson

to his patients necessarily violate the Public Health Law.

129.    This is not only a knowingly false posting but a deprivation of Plaintiff's due process rights to notice and opportunity to be heard. No formal determination in accordance with the provisions of PHL Sec. 2168 has ever been made by the Commissioner or anyone else at any time pursuant to PHL Sec. 12-a that the vaccinations administered by Dr. Nesselson violate New York law.

130.    Nor can such a formal determination exist simply because there was no formal process pursuant to which this determination was ever made and no due process was afforded to the plaintiff before this adverse action was taken by the Commissioner.

131.    All of the foregoing constitutional issues are now pending sub judice before DR. Rachon in the existing litigation.

132.    It is on the background of these unconstitutional and outright illegal actions of the Commissioner and in support of the same that the OPMC director launched and is continuing to conduct the current investigation against the Plaintiff  for the purposes of commencing the formal disciplinary process in bad faith and in support of the Commissioner's continued due process violations.

## ARTICLE III STANDING

133.    The Plaintiff has Article III standing to challenge the Defendants' staged "disciplinary investigation" where the same is not conducted in good faith because no disciplinary issues exist for all of the reasons articulated above.

134.    Although the Office of Professional Medical Conduct is an agency which was created by statute PHL Sec. 230, it is a subagency of the NYS department of health which is undue the umbrella of the DOH and is subject to oversight  by the commissioner.  The Commissioner is

the direct supervisor and boss of the director of the OPMC.

135.    In this case, the director of the OPMC conspired and continues to expire with the Commissioner to deprive the Plaintiff of his due process right in the CIR without a hearing and opportunity to be heard, and to further the Commissioner's scheme who acts in concert with the City officials to deny Plaintiff's property interest in access to the CIR by obstructing the same without notice and opportunity to be heard.

136.    The current staged investigation in not conducted in good faith because the Plaintiff committed no willful or grossly negligent violation of any statutory provisions, namely the reporting requirements of PHL Sec. 2168 for all of the reasons articulated hereinabove.

137.     Where the defendants are using the investigative process for the purposes of intimidation and coercion and for the purposes of furthering the commissioner's continued due process violations as set forth above, the investigation itself amounts to a due process violation and the actions of the Director are taken in her personal capacity and outside the scope of her functions.

138.    As a result of Commissioner's and defendant Bandagos's actions the Plaintiff has lost business and patients and totally lost his ability to vaccinate his pediatric patients for all of the reasons set forth above.

139.    As a result of defendants' deprivation of due process and conspiracy to violate Plaintiff's due process rights the Plaintiff has suffered a loss of his ability to provide his pediatric patients with the mandatory school vaccinations mandated by PHL Sec. 2164.

140.    For all of the above referenced reasons the plaintiff has suffered a concrete injury in fact which satisfies the Article III standing requirement.

## AS AN FOR A FIRST CAUSE OF ACTION -
### INJUNCTIVE RELEIF PURSUANT TO
### 42 USC SEC. 1983

141.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same is set forth at length herein.

142.    The Plaintiff is seeking injunctive relief pursuant to 42 USC Sec. 1983 enjoining the defendants their servants and assigns from prospectively violating Plaintiff's due process rights by: (a)  conspiring or causing to conspire with the Commissioner and the City officials to deprive the Plaintiff of his property interest in his access to the CIR through the use of the New York disciplinary process; (b) using the disciplinary process to impalement systematic state government harassment of the Plaintiff by barring him from vaccinating his pediatric patients and providing documentation which is mandated by New York law under PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6; (c) proceeding or causing to proceed against the Plaintiff in a formal disciplinary proceeding based upon the premises that he willfully or with gross negligence violated the reporting requirements of PHL Sec. 2168, where the Commissioner himself and his employees acted to bar Plaintiff's access to CIR without the due process formalities of the Fourteenth amendment and of PHL Sec. 12-a; (d) proceeding or causing to proceed against the Plaintiff in a formal disciplinary proceeding based upon the premises and legal fiction that plaintiff's inability to report to the CIR which was caused and continues to be caused the Commissioner's own unauthorized illegal and unconstitutional actions  and amounts in any manner shape or form to valid grounds for discipline.

143.    To  state a cause of action under 42 USC §1983 the Plaintiff must allege  that some state official acting under color of state law deprived him of a federal right. Furthermore, to state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct

(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. The requirement that the defendant acted under 'color of state law is jurisdictional. Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.

144.    In this case the Plaintiff alleges that the defendants herein are prospectively and continuously depriving the Fourteenth Amendment rights for all of the reasons articulate above in this complaint. Defendants' conduct amounts to a dual deprivation and violation of Plaintiff's due process rights and of his constitutionally protected due process rights to practice his profession without unreasonable government interference. The investigation and imminent bad faith prosecution is aimed at intimidating and harassing the Plaintiff while the Commissioner and his employees are continuously depriving the Plaintiff of his due process rights as set forth in this complaint.

145.    In order to receive injunctive relief under 42 USC §1983, there must be the possibility and threat of prospective violation of constitutionally protective rights. In this case the Plaintiff is seeking prospective injunctive relief against the defendants herein for all of the reasons articulated above.

146.    It is defendants' continuous prospective actions in participating in the continued unconstitutional deprivation of Plaintiff's access to NYCIR and the blocking of his ability to vaccinate his pediatric patients, and the continuation of the present "investigation" which is part of Commissioner's systematic harassment of the plaintiff and his staging of a bad faith prosecution in order to continue to violate Plaintiff's due process rights.

147.    In addition, the Plaintiff has shown that he is likely to succeed on the merits of his underlying claim for injunctive relief pursuant to 42 USC §1983.

148.    In order to state a claim under §1983, a Plaintiff must also allege the violation of a right preserved by another federal law or by the Constitution. That is exactly what the Plaintiff has done in this case. He alleged violation of his  constitutionally protected rights of due process under the Fourteenth Amendment of the Constitution to be free from actions of license restriction and  to be free from unreasonable governmental interference with his practice of medicine in violation of his Fifth and Fourteenth Amendment rights.

149.    To establish liability under 42 U.S.C. § 1983, a Plaintiff must prove two essential elements: (1) that the Defendants acted under color of state law and (2) that the Plaintiff suffered a deprivation of a constitutional right as a result of that action.

150.    In this case the Plaintiff has shown that the Defendants have acted and continue to act under the color of New York Law. Namely Dr. Nesselson has shown that the defendants are acting under the guise of enforcing the integrity of NYCIR under PHL §2168 and investigating disciplinary conduct for staged violations of PHL Sec. 2168, namely Dr. Nesselson's inability to report vaccinations to the CIR due to defendants' own denial of his access to the CIR.

151.    Here the defendants themselves created a legal fiction and staged the false narrative of the purported violation of PHL Sec. 2168 for all of the reasons articulated hereinabove. Then they turned around and are investigating him for the very same issues which they themselves created and which in the past they represented that do not amount to violations of any New York law.

152.    Consequently, the Plaintiff will be successful on his  claims for a permanent injunction pursuant to 42 U.S.C.  § 1983 seeking to prevent further violation of Fifth and

Fourteenth Amendment rights though the use of the New York investigative process employed by the investigators of the department of Health.

153.    For all of the above referenced reasons, the Plaintiff is seeking injunctive relief pursuant to 42 USC §1983 against the Defendants in the form and substance set forth above.

## AS AND FOR A SECOND CAUSE OF ACTION
## DECALARATORY JUDGMENT 28 USC SEC. 2201et.eq.

154.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same is set forth at length herein.

155.    Plaintiff is seeking a prospective declaratory judgment against the Defendants for violation of constitutional rights as follows:

156.    Plaintiff is seeking a declaratory judgment against the defendants pursuant to 28 USC §2201 as follows: (a) declaring defendants' continuous participation through the acts and actions set forth in this complaint, in Commissioner's scheme to continuously violate Plaintiff's due process rights as stated in this complaint as a continuous and prospective violation of Plaintiff's due process rights; (b) declaring defendants' staged purported investigation of Plaintiff's inability to report vaccination to the CIR as systematic harassment aimed at further denying the Plaintiff's due process rights while depriving him of his property interest in the CIR without due process and legitimizing commissioner's acting summarily and by administrative fiat against the Plaintiff while denying him due process as specified in this complaint; (c) declaring any action sought to be taken by the defendants against the Plaintiff under the color of PHL Sec. 230 as a further violation of Plaintiff's due process rights and as unconstitutionally void.

157.    The declaratory relief sought in connection with defendants' conduct specified in subparagraphs (a) through (c) above is supported by the totality of the allegations of this complaint which for the sake of brevity are incorporated herein by reference.

158.    The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations.

159.    A justiciable controversy ripe for adjudication exists because the defendants are participating in Commissioner's scheme to deprive the Plaintiff of due process and because the defendants' instant investigation is conducted in bad faith for the purposes of systematically harassing the Plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION - PRELIMINARY INJUNCTION FRCP 65.

160.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same is set forth at length herein.

**(i)      Nature of remedy sought**.

161.    The Plaintiff is seeking a temporary injunction pursuant to FRCP 65 pending the hearing and determination of this underlying action as follows: (a) preliminarily enjoining the defendants, their servants agents and assigns from continuing to use the New York disciplinary investigative powers to prospectively subject the Plaintiff to systematic government harassment and to prospectively violate Plaintiff's due process rights by subjecting the Plaintiff to systematic harassment and to a bad faith inquiry of matters which: (i) were artificially created by the defendants themselves as set forth in this complaint; (ii) the defendants themselves represented to the Plaintiff that do not amount a violation of any New York law so long as he complied with

defendants' instructions regarding the documentations of vaccinations; (iii) in and onto themselves violate Plaintiff's due process rights as articulated herein and (iv); (b) preliminarily enjoining the defendants, their servants agents and assigns  from issuing or causing to issue and file formal charges against the Plaintiff pursuant to the provisions of PHL Sec. 230 and from commencing formal disciplinary proceedings  based upon alleged violations of the vaccine  reporting requirements of PHL Sec. 2168 as the commencement of such proceedings amount to bad faith prosecution and therefore to a prospective violation of due process; (c) preliminarily enjoining the defendants from continuing or causing to continue the participation in Commissioners' continuous and perpetual violation of Plaintiff's due process rights as articulated herein and as set forth in the action pending sub judice titled *Nesselson v. McDonald* et.al SDNY case No. 1:25-cv-04464 JLR

### (ii). <u>Irreparable harm – violation of constitutional rights.</u>

162.    Federal courts in this jurisdiction defined and addressed the existence of the element of irreparable harm where violation of constitutional rights is alleged. An alleged prospective  violation of a constitutional right "triggers a finding of irreparable harm" in the context of injunctive relief.

163.    A  party applying for a preliminary injunction satisfies the requirement to show irreparable harm by alleging violations of constitutional rights. A court will presume that a movant has established irreparable harm in the absence of injunctive relief if the movant's claim involves the alleged deprivation of a constitutional right. When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.

164.    Moreover, courts can only enjoin existing and prospective violations of constitutional rights occasioned by the actions of state actors and officials. Past constitutional violations are not actionable through injunctive relief.

165.    The alleged present or prospective violation of a constitutional right triggers a finding of irreparable injury. Because violations of constitutional rights are presumed irreparable, the very nature of such allegations" satisfies the requirement that it show irreparable injury.

166.    For all of the reasons articulated hereinabove, with respect to all of the actions of the defendants which are the subject matter of this litigation,  as stated in this complaint, the Plaintiff has shown the existence of prospective constitutional violations of his due process rights under the Fourteenth Amendment of the U.S. Constitution necessitate the issuance of both a preliminary injunction.

167.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of his Fourteenth Amendment rights exists.

**(iii)    The Plaintiff has shown a likelihood of
success on the merits.**

168.    As set forth above, the Plaintiff has made a strong showing of likelihood of success on the merits regarding application for a mandatory injunction.

169.    Specifically, Plaintiff  has shown that the defendants are aiding and abetting and participating in Commissioner's scheme to prospectively deprive the Plaintiff of due process rights while they know and should have known that no violation of any state local or federal law exists and that the Plaintiff did not commit any professional misconduct as defined by Education law Sec. 6530.

170.    In this case the defendants  themselves provided guidance and assurances between November  2007 (some 11 months after PHL Sec. 2168 went into effect)  through April of 2014 to the Plaintiff specifically stating that so long as he documented vaccinations in the medical records and so long as he provides the written certifications mandated by PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6, no violation or misconduct would occur.

171.    In this case the defendants themselves in conspiracy with the city officials created Plaintiff's inability to report vaccinations to the CIR by deliberately blocking access to the same through inaction, lack of communication and through a scheme which deliberately bypasses the due process mandates of the Fourteenth Amendment.

172.    Defendants are now turning and purporting to investigate and prepare for prosecution a case which they themselves have created and which they know that it does not amount to professional misconduct.

174.    Even the relevant  statute PHL §. 12-a, which governs the limited powers of the Defendants to act with respect to  any violations of PHL § 2168 and 10 NYCRR §66-1.2 (none were ever identified or specified by the Defendants in this case) mandates that in case that such a violation occurs, notice an opportunity to be heard through formal hearings have to be given to the Plaintiff before any action is taken against him by the Commissioner.  No such procedure as specified in PHL § 12-a has ever been followed in this case by the Commissioner.

174.    Now another agency of the Commissioner and its director head, joined the unconstitutional scheme to deprive the Plaintiff of due process by concocting an investigation and a case which simply does not amount to any professional misconduct.

175.    For all of the foregoing reasons the Plaintiff has made a strong showing of a likelihood of success on the merits of his application for a preliminary injunction against the defendants.

**(v)    Balance of equities and public interest militate in favor of the
issuance of a mandatory preliminary injunction.**

176.    The balance of equities and public interest favor a preliminary injunction here because there is a public interest in avoiding violations of constitutional rights.  The government does not have any legitimate interest on acting unconstitutionally.

177.    In addition under the facts of this case, the defendants' scheme to bypass due process and involve the unauthorized branding web site as a de facto proclamation of state official action while completely evading due process and judicial scrutiny became a threat to the public health and safety of the children in this state for the reasons articulated above in this pleading.

178.    For all of the above referenced reasons the Plaintiff's request for the issuance of a preliminary injunction should be granted and a preliminary injunction should issue against the defendants herein in the form and substance set forth above.

Dated: February 13, 2026

> Attorney for the Plaintiff
> JACQUES G. SIMON ATTORNEY
> AT LAW P.C.
> */s/ Jacques G. Simon*
> Jacques G. Simon, Esq.,
> 200 Garden City Plaza Suite 301
> Garden City, NY 11530
> Bar No. JS 9212
> Phone: (516)378-840 Fax:(516)378-2700
> Email: jgs@jacquessimon.com

## DECLARATION VERIFYING ALLEGATIONS IN THE COMPLAINT

Mark Nesselson MD submits this declaration pursuant to 28 U.S.C. §1746:

1.    I am the Plaintiff in this action and as such I am fully familiar with all of the facts and circumstances surrounding this litigation.

2.    I have read the within Verified Complaint and I declare that all of the facts set forth therein are true to the best of my knowledge.

3.    The source for the allegations made upon information and belief are documentations submitted in the case dubbed Nesselson I in the attached complaint and as to those allegations I believe them to be true.

4.    I submit this declaration under the penalties of perjury and know that if any statement herein is knowingly false, I will be subject to punishment.

Dated: February 19, 2026

MARK NESSELSON M.D.