**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MARK NESSELSON M.D.

Case No.: 1:26-cv-0168- JAV

Plaintiff,

**DECLARATION OF MARK NESSELSON MD IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION.**

-against-

James McDonald MD in his official capacity as Commissioner of NYS Department of Health; Shelly Wang Bandago, in her official capacity as Director of New York State Office of Professional Medical Conduct.

Defendants.
---------------------------------------------------------X

COMES NOW the Plaintiff Mark Nesselson MD and submits this declaration pursuant to 28 U.S.C. §1746 in support of his motion for a mandatory and prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65.

1. I am the Plaintiff in this action and as such I have personal knowledge of all of the facts and circumstances pertaining to this litigation.

2. I submit this declaration pursuant to 28 U.S.C. §1746 in support of my instant motion for a mandatory and prohibitive injunction, as set forth in the accompanying Complaint the accompanying Notice of Motion and supporting memorandum of law filed simultaneously herewith.

3. I have read the Amended Complaint and the exhibits annexed thereto and know all of the facts and allegations therein to be true to the best of my knowledge. As to those facts stated upon information and belief, I believe them to be true.

4. The source of my belief is the review of the case file documents and my readings of relevant internet postings referred to in the Amended Complaint.

5. In this declaration the following references shall apply:

(a) The defendant James McDonald MD shall be referred hereinafter as the "Commissioner".

(b) The Director of investigations of the NYS Department of Health, Joseph Giovannetti, shall be referred hereinafter as "Giovannetti."

(c) The Commissioner and Giovannetti shall be referred to hereinafter collectively as "state defendants or "state officials".

(d) The director of the New York City Department of Health and Mental Hygiene, ("DHMH"), Michelle Morse, the assistant commissioner Bindi Crouch and the DHMH officials in charge of processing application for access, as well as their predecessor, employees servants and assigns to the New York City Immunization registry ("CIR") shall be referred to hereinafter collectively as "City Officials". or "City defendants".

(e) The Office of Professional medical Conduct shall be referred to hereinafter as "OPMC"). The defendant Shelly Wang Bandago shall be referred hereinafter as “Bandago” or “OPMC Director”.

(f) The New York City Immunization Registry which was established by PHL Sec. 2168 shall be referred hereinafter as "CIR".

## <u>FACTUAL BACKGROUND</u>

### (a) In general - factual background regarding my training, licensing, practice of medicine and <u>prior irrelevant disciplinary action.</u>

5. I am a physician licensed to practice medicine in the state of New York. My license

number is 165950 issued on April 18, 1986. My office is located in New York City at the address mentioned hereinabove. I am a pediatrician and my practice is focused on pediatric patients. I attended medical school at the Abraham Lincoln School of Medicine at the University of Illinois from September, 1978 and graduated in December, 1982. I served my Pediatric Internship from July 1983 through June 1984, and subsequently my Pediatric Residency from July 1984 through June 1986 at New York University Medical Center.

6. From September 1986 through August 1993, I was an attending physician in the outpatient department at Metropolitan Hospital Center in New York City. I was bestowed the academic credential of Assistant Professor of Clinical Pediatrics from New York Medical College, under whose auspices I taught medical students and supervised interns and resident physicians.

7. From 1990-1992, I attended as a non-degree candidate, the Pacific College of Oriental Medicine. In 1993-1994, I attended the Natural Gourmet Institute to identify foods as tools for healing. I opened my private practice in Pediatric and Adolescent Medicine in its current location at 146 W 95th St New York, NY 10025in June, 1989.

8. I temporarily relocated to the island of Kauai in Hawaii. I maintained a practice of phone consultations with my New York patients, and traveled to New York four times yearly to see patients for a concentrated two to three weeks period at a time.

**(ii) <u>The focal issue of this litigation.</u>**

9. The focus of this litigation and of the present motion is on seeking judicial intervention to enjoin the systematic harassment of myself and my patients by the Commissioner and the OPMC Director through the use of the purported investigative process of Public Health Law Sec. ("PHL") 230 and 206(4)(a) and PHL 12-a. The further focus of this action and the present motion is to further enjoin defendants' use of the purported investigative process to stifle

my First Amendment rights to petition the courts for relief regarding the state officials' systematic harassment. In addition, the focus of this motion and litigation is to enjoin the state officials' violation of my due process rights to be free from state government besmirching of my reputation on their official web site while falsely holding me out to the public as a vaccine fraudster on the state defendants' official web site and while affecting my legal status and ability to vaccinate my pediatric patients based upon a legal fiction created by the Commissioner and Mr. Giovannetti and supported by the OPMC Director through the current existing investigation.

10. It is my position that the reason for this continued illegal and unconstitutional conduct subject to the underlying action for relief under 42 USC Sec. 1983 is to provide cover for Commissioner's continued deprivation of my due process rights, while continuing to smear my reputation on the internet by: (a) maliciously labeling me as a vaccine fraudster without offering me a hearing and by (b) continuing to harass me and my patients as described below in this declaration through the conspiracy which the defendants concocted based upon a legal fiction created by them which in turn is predicated upon a scenario which the Commissioner, the OPMC Director and their predecessors themselves created and continue to create since 2007 as sated in this declaration.

11. In the underlying action I am challenging the Commissioner's and the OPMC Director's simultaneous use of the New York disciplinary investigative system under the Public Health Law in conspiracy and in collaboration with the OPMC Director to give credence and to legitimize his continuous deprivations of my due process rights described herein and to harass me and my patients while knowing that no professional medical misconduct ever took place.

12. In this motion I am seeking a preliminary injunction against the Commissioner and the Director of the OPMC preliminarily enjoining them from further using the disciplinary

investigative process of the Public health Law ("PHL") for the purposes of harassing me and my patients as stated in this declaration.

13. In this declaration the following references will be used:

(a) The defendant James McDonald MD shall be referred hereinafter as the "Commissioner".

(b) The Director of the NYS Department of Health, Joseph Giovannetti, a non-party to this action shall be referred hereinafter as "Giovannetti."

(c) The Commissioner and Giovannetti shall be referred to hereinafter collectively as "state officials".

(d) The director of the New York City Department of Health and Mental Hygiene, ("DHMH"), Michelle Morse, the assistant commissioner Bindi Crouch and the DHMH officials in charge of processing application for access, as well as their predecessor, employees servants and assigns to the New York City Immunization registry ("CIR") shall be referred to hereinafter collectively as "City Officials".

(e) The Office of Professional Medical Conduct shall be referred to hereinafter as "OPMC".

(f) The defendant Shelly Wang Bandago, who is the OPMC director shall be referred hereinafter as "OPMC Director or "Director" .

(g) The New York City Immunization Registry which was established by PHL Sec. 2168 shall be referred hereinafter as "CIR".

**(iii) The interrelation between the Commissioner and the Director <u>and the official functions performed by the two defendants.</u>**

14. The interrelation between the Commissioner and the Director of the OPMC are discussed in the Amended Complaint and are incorporated by reference herein. Succinctly stated

the OPMC is a sub agency of the New York State Department of Health ("DOH") operating within the DOH and the Director is the subordinate of the Commissioner.

15. The overall enforcement functions of the Commissioner and Mr. Giovannetti in this case different from those of the Director of the OPMC.

**(iv) The OPMC Director's purported investigation which is subject to this litigation is directly connected to the timing and substance of Commissioner's systematic <u>harassment of the Plaintiff since March 2024.</u>**

15. As it can be seen from the accompanying memorandum of law, a continued joint systematic pattern harassment by the defendants under the color of New York law has been commenced and continues through this date since March of 2024.

16. In order to understand how and why the Director's purported investigation in this case is connected to and supports Commissioner's systematic harassment directed towards me and my patient since 2024, it is important for the Court to understand what Commissioner's and Mr. Giovannetti's actions which amount to systematic harassment have been against me since 2024 and how the OPMC Director voluntarily joined in that harassment by maintaining the current investigation without any grounds for it.

17. It is also important to understand that the facts supporting this motion are not presuppositions and conclusory allegations.

18. The recitation of the facts in this case as set forth in this declaration is predicated upon actual statements made in declarations and exhibits submitted during the litigation in *Nesselson v. McDonald* 1:25-cv-04464-JLR (hereinafter "Nesselson 1") by Mr. Giovannetti (who is the Commissioner's director of Investigations, and by Bindi Crouch, the Deputy Commissioner of Health of the New York City department of Health and Mental Hygiene ("DHMH").

19. The facts recited herein are also based upon documentary evidence annexed hereto as well as on my personal knowledge of facts going back all the way to 2006.

(a) **<u>Summary of the acts constituting the systematic harassment</u>**.

20. The onset of Commissioner's and OPMC Director's pattern of systematic harassment which continuously and prospectively violates my due process rights, and defendants' harassment with intent to intimidate and stifle my First Amendment rights as set forth in this declaration commenced in March 2024.

21. To sum up, the defendants' acts which are the subject matter of this litigation amount to:

(a) ongoing and repeated unconstitutional systematic harassment of myself and my patients through the use of the investigative powers of the Commissioner vested by PHL Sec. 206(4)(a) and 12-a(1) and vested in the OPMC Director by PHL Sec. 230;

(b) harassment and intimidation through the continued OPMC Director's investigation with knowledge that no medical misconduct took place in retaliation for the exercise of my First Amendment right to petition the courts to intervene and stop the systematic harassment;

(c) the Commissioner's besmirching my reputation continuously on the DOH official web site holding me out to the public as a vaccine fraudster without notice and opportunity to be heard while changing my legal status based upon a legal fiction created by Giovannetti, the Commissioner and now embraced by the OPMC Director, from a pediatrician who could vaccinated his pediatric patients to a pariah whose legally provided written vaccine certifications are rejected by school district upon instruction of the Commissioner and Mr. Giovannetti;

(d) pretending to enforce PHL Sec. 2168 under the guise of vaccine fraud while fabricating a legal fiction which has no basis in New York law and which does not amount to vaccine fraud

or as in this case to any violation of New York law. Specifically the defendants created a legal fiction which states that unless I have access and report vaccinations to the CIR, I am prohibited from vaccinating pediatric patients and from providing paper certifications of vaccinations to school districts under Commissioner's own regulation 10 NYCRR Sec. 66-1.6. No such law exists in New York to justify their "ongoing" endless investigation. As discussed in the memorandum of law there is no legal basis for this fictitious position so long as I document the medical records with information regarding the vaccinations and provide paper certifications issued pursuant to Commissioner's own regulations 10 NYCRR Sec. 66-1.6 and PHL Sec. 2164(5). The Commissioner's potion adopted by the OPMC director that no schools should accept my paper certificates because the vaccinations provided by me violate New York law is simply unsupported by any unknown law in New York. See memorandum of law.

(e) blocking of the processing of my February 2024 application for access to the CIR by administrative fiat and without notice and opportunity to be heard;

(f) prohibiting schools from accepting vaccination certifications issued by me in accordance with PHL Sec. 2164(5) and in accordance with the Commissioner's own regulations through the issuance of email blasts and internet public postings without any hearing or opportunity to be heard and without any formal determination having been made that I violated any law;

(g) the defendants are well aware of my inability to gain access to the CIR since 2007and the defendants themselves represented to me since 2007 that the City Officials' failure to process my access application to the CIR in 2006 which in turn created my inability to report vaccinations to the CIR pursuant to PHL Sec. 2168 does not amount to any violation of the law so long as I complied with the paper certificates requirements of PHL Sec. 2164(5) and Commissioner's

regulations and then, some 17 years after actively enforcing this policy changing course without notice and investigating me for vaccine fraud; ;

(h) in 2024 obtaining medical vaccination records of approximately 323 of patients from me pursuant to a catchall subpoena issued on July 22, 2024 by Mr. Giovannetti and then issuing unconstitutional and illegal subpoenas to schools in May and June 2026 seeking the same medical records which the defendants had in their possession since 2024 for the purposes of intimidating and scaring and alienating my patients and damaging my business;

(i) the Director's participation in the pattern of harassment by voluntarily or involuntarily at the direction of the Commissioner and Mr. Giovannetti participating in the same through the opening of an OPMC purported investigation at the same time when the Commissioner and Giovannetti opened their own in July 2024.

(j) The Director's purported investigation of me based upon a legal fiction created by the defendants and based upon the knowingly false premises that I knowingly or recklessly violated PHL Sec. 2168.

(k) the OPMC Director's purported investigation of me failed not identify any viable professional misconduct grounds for continuously maintaining the same in the letter of March 14, 2025 offering a pre charging interview pursuant to PHL Sec 230(10)(a)(iii)(A). In addition

**(iii) Chronological relevant facts supporting the request for a preliminary injunction of the OPMC Director's systematic harassment of me through the disciplinary investigation <u>process of PHL Sec. 230.</u>**

22. Contrary to Director Bandago's representation in her declaration in support of the initial motion to dismiss submitted in this case DE 24 stating that the current investigation of the OPMC is continuation of an investigation commenced by the OPMC in 2022, it is not. Both the

timing of the commencement of the investigation, as well as the subject matter of the investigation identified in OPMC's letter of March 14, 2024, discussed below suggests otherwise, namely that the Director's investigation is part of the Commissioner systematic harassment of me through the use of the New York investigative powers granted by statute to the commissioner.

**(a) General facts related to the timing of the OPMC investigation suggests a conspiracy between the OPMC Director and the Commissioner to systematically harass me through the use of the statutory investigative authority which they have under the Public Health law.**

23. The OPMC investigation in this matter was kicked off in July 27, 2024 by a letter demanding the production of medical records of 10 named patients (EX A hereto). The opening salvo of the OPMC opening letter was issued more or less at the same time when the Commissioner commenced his purported investigation through the issuance of a subpoena by Mr. Giovannetti dated July 22, 2024 (EX B hereto).

24. While the Giovannetti subpoena EX B hereto was ambitious and embarked on a fishing expedition demanding non-descript medical records of vaccination of all my pediatric patients since January, 2019 the request from the OPMC director for medical records of ten identified patients whose names were disclosed specifically in the initiating record demand (EX A hereto – names redacted), was more modest.

25. I initially provided the ten medical records to the OPMC in response to the July 27, 2024 demand. Between July 2024 and October 2024 I also provided to Giovannetti some 323 medical records. As Giovannetti received my medical records, he shared the same with the OPMC Director.

26. The Director of the OPMC made a demand for the disclosure of 10 more named patients whose identity must have been shared by Giovannetti form the records received from me

in response to the subpoena.

27. All in all I provided 20 specific medical records to the OPMC investigators as requested in their first letter of July 27, 2024 and then in a subsequent letter which I no longer have in my possession. Between July 2024 and March 14, 2025, the OPMC Director did nothing. On March 14, 2025 the OPMC Director issued a letter purportedly offering me a statutorily mandated pre charging interview provided for in Public Health Law Sec. 230. As discussed below the letter bizarrely identified interview issues and purported misconduct which simply did not exist and which the Director knew and should have known that they do not exist A copy of the March 14, 2025 letter is annexed hereto as EX C and will be discussed in detail below.

28. Without exception, where the pediatric patients in question were vaccinated, all of the medical records had documentations of the vaccines being administered to my pediatric patients, have the certification provided on official forms of the NYC DOH and in three separate cases on Connecticut forms and none of the patients have been evaluated for exemptions or ever been provided exemptions from vaccinations.

29. Director Bandago stated in her declaration in support of the motion to dismiss that the 2024 investigation which commenced by the letter of July 27, 2024 (EX A) was related to an earlier investigation commenced by the OPMC against me in 2022. It was not. The reason why the investigation commenced by the OPMC Director in 2024 was not related to the OPMC's investigation of 2022 and instead was related to the conspiracy to systematically harass me between the Commissioner and the OPMC Director and to the joint "investigation" commenced by both defendant in July 2024 is simple.

30. The earlier purported investigation pertained to one patient only, MH (discussed in my response to the March 14, 2025 letter). MH was never vaccinated by me and no records of her

vaccination were ever signed by me documenting that such vaccinations were ever administered – See my response to March 14, 2025 letter dated November 23, 2025 EX D hereto.

31. Nonetheless, in order to gain an unfair advantage in his divorce proceedings over the mother of MH, Michael Hardy, an individual who already identified himself to this Court insisted that I never vaccinated his daughter and that I provided vaccination certification for her to the school district. He filed a complaint with the OPMC.

32. At that time notwithstanding the statutory confidentiality provisions of PHL Sec. 230 surrounding disciplinary proceeding, officials of the OPMC leaked the investigation information and Mr. Hardy's complaint to the New York Post. The tabloid paper then made an article about me dated November 2022 in which I was portrayed as being under OPMC investigation due to the Hardy Complaint. A copy of the NY Post article is annexed hereto as EX E. In 2022 to the best of my recollection, the OPMC Commissioner did not request to see anything other than the medical record of MH and nothing else was being investigated at that time.

33. By contrast, the subject matter of the OPMC Director's 2024 investigation as disclosed in the letter of March 14, 2025 EX C hereto, was focused on the main issue of my failure to report vaccines to the CIR. That issue was created by first by the City Officials refusal to process my CIR application in 2006, the representations made to me from 2007 though 2014 by the Commissioner's and OPMC Director's probation officers and monitors, and subsequently in 2024 by the commissioner and Mr. Giovannetti themselves. All of these factual issues are discussed below in factual detail. Therefore, the OPMC Director's disavowing any connection between the investigation launched in concert with the commissioner in 2024 while traying to relate it to the 2022 investigation is a red herring.

34. Meanwhile the OPMC Director did not do anything between July 2024 when I

provided the OPMC with the medical records requested and March 14, 2025.

**(b) The issues identified in the OPMC mandatory letter of March 14, 2025 concerning the purported offering of a statutory interview before the filings of charges, indicate that by OPMC Director's own admission no bona fide grounds for the investigation exist.**

35. According to their letter of March 14, 2025, (EX C) which was issued purportedly in accordance with the mandates of Public Health Law ("PHL") Sec. 230(10)(a)(iii)(A), the defendants identified the following purported medical misconduct which they sought to question the Plaintiff on during the statutory interview:

> The issues under investigation involve your care and treatment of the patients listed below from 2009 to present. The discussion will include the following: the ordering, preparation, administration, billing, and/or documentation of vaccines administered to these patients; the reporting of these vaccines to, and your participation in, the New York Citywide Immunization Registry (CIR) as well as the New York State Student Identification System (NYSSIS); your evaluation of patients for immunization exemptions and/or contraindications as well as your issuance of exemption letters; and discussions you may have had with the patients' parents or guardians. The letter then identifies the names of 20 patients (redacted in the annexed exhibit). See Doc 1-3 EX C hereto.
>
> The discussion will also include the circumstances surrounding your BPMC Board Order #07-250 imposed on 11/21/2007 and modified on 04/13/2011.

36. The letter identified without exception the names of 20 patients, whose records were provided by me in response to the July 27, 2024 letter and in further response to an additional letter written demand made by the OPMC Director, a copy of which I have not retained but which succeeded in time the letter demand of July 27, 2024.

37. By letter dated November 22, 2025, EX D hereto, I responded to defendants' offer of an interview and rejected the same.

38. Instead I opted to submit a written statement explaining to the defendants why none of the disclosed subject matters in the March 14, 2025 state any professional medical misconduct defined in Education Law Sec. 6530.

39. In that responsive letter I explained how most of the issues identified in the March 14, 2025 were either disposed of by Defendants' own past affirmative representations made to the me during the 6 years of supervised probation period which they themselves personally supervised between 2007 and 2014. I further attached proof of compliance with New York Law, namely the issuance of written certifications of vaccinations without exception to each identified patient.

40. As reason for the rejection the I invoked the litigation in "Nesselson 1" where the Commissioner is also one of the two main defendants.

41. Parenthetically, the Complaint in Nesselson 1 has been dismissed by decision and order of Judge Rochon on procedural grounds (not on factual merits) on July 31, 2026 and the dismissal is now on appeal to the Second Circuit. However, as considered in the memorandum of law the dismissal of Nesselson 1 does not have any impact or relevance on the issues in this case.

42. The March 14 letter - EX C identifies the names of 20 specific patients with respect to whom the request for an interview and the identifies issues pertain. The investigation is therefore patient specific and limited to these patients as per New York law requirements. That is confirmed on the second page of the letter EX C.

**(I). The first identified issue in the March 14 letter does not amount to professional medical conduct <u>and therefore it cannot form the basis for this investigation.</u>**

43. The first identified issue in the March 14, 2026 letter is the ordering, preparation, administration and billing and/or documentation of vaccines administered to the 20 patients from 2009 through March 14, 2025.

44. On its face the identification of these issues for the purposes of questioning me during the purported interview is a harassment issue for three reasons: (a) No known statute or regulation mandates that the foregoing records identified as “ordering, preparation, and billing” of

vaccines be kept by any physician in this state as part of the medical record at any time where no CIR reporting can be made; (b) the OPMC Director never asked me to produce papers documenting the "ordering, preparation, administration and billing and/or documentation of vaccines administered to the 20 patients from 2009 through March 14, 2025" – see EX A hereto – letter of July 27, 2024. Therefore the OPMC Director never had in their possession such information to discuss with me on the date of the purported interview; (c) the Commissioner enacted 10 NYCRR Sec. 66-1.2 pursuant to the reporting statute PHL Sec. 2168. Even that regulation does not speak of the keeping of receipts and documentation regarding the ordering and preparation of vaccines.

45. The documentation of vaccines administered to the 20 patients are obviously the medical records of each one of the 20 patients evidencing the administration of such vaccines which without exception have been produced twice to the OPMC: (a) once in 2024 when the demand for the records was made initially and (b) again alongside the response provided by the Plaintiff in lieu of interview EX D hereto –I produced the medical records evidencing the vaccinations as well as the mandated certifications issued pursuant to Commissioner's own regulation. The documentation, for the vaccinated minors contains without exception the specific information mandated by the Commissioner in 10 NYCRR Sec. 1.6, namely the date of the administration of the vaccine and the name of the vaccine. See Ex D hereto.

46. In her declaration in support of the motion to dismiss in this case DE 26 Director Bandago acknowledged receipt of my response. Nonetheless she still maintains that the investigation is ongoing. This statement is significant because, unless the OPMC Director has any other evidence than the one identified in the March 14, 2025 letter for the continuation of the investigation, none of the grounds stated in the same letter on their face provide the basis for the

continuation of this investigation. Therefore, the only reason for the continuation of the OPMC investigation by process of elimination is systematic harassment.

47. The attachments to my response – EX D - are omitted from this submission as they contain protected confidential information. However the Director is in possession of the same information summarized in my response EX D. In my response I identified the entries in each medical record that supported the vaccinations as well as, without exception each and every certificate of vaccination filled out in accordance with PHL Sec. 2164(5) and Commissioner's own regulation 10 NYCRR Sec. 66-1.6. I identified the mandated regulatory information, where applicable appearing on NYC DHMH forms and the forms of other school districts in New York and Connecticut , as mandated by PHL Sec. 2164(5) and by regulation 10 NYCRR 66-1.6. This information actually appears from the face of the records. See EX D.

48. Therefore the first issues identified by the OPMC direction in the letter of March 14, 2025 – EX C are not bona fide investigation issues but pure harassment which are part of the systematic harassment perpetrated by the defendants on me and my patients.

**(II) The second issue identified in the March 14, 2024 does not form the grounds for any professional misconduct triggering the investigative authority <u>of the OPMC Director.</u>**

49. The next issue identified by the OPMC defendants in the March 14, 2025 letter – EX C exemplifies the use of the disciplinary investigative system for the purposes of harassment as it has no semblance of relevancy to any issues of professional medical misconduct which are defined in Education law 6530.

50. The issue is identified as a discussion of "the reporting of these vaccines to, and your participation in, the New York Citywide Immunization Registry (CIR) as well as the New York State Student Identification System (NYSSIS).

51. For starters, the New York State Student Identification System is established by New York Education Law § 305(22), which grants the Commissioner of Education authority to create and implement a statewide system of unique student identification numbers. The statute mandates that all students in both public and nonpublic schools within New York State be assigned unique identification numbers for student tracking and state reporting purposes, with students retaining these numbers until age of 21.

52. The NYSSIS therefore has no relevancy to vaccination whatsoever. If the defendants contend that this was a bona fide identification and disclosure of the issues to be discussed during the interview as mandated by PHL Sec. 230(10)(a)(iii)(A), it is incomprehensible why they would like to talk to the Plaintiff about his participation in a program which has nothing to do with the practice of medicine and does not impose any statutory duties upon me.

53. Next is the identification of the subject matter of the reporting of the vaccines administered to the 20 patients, and my participation in the CIR. See EX C hereto.

54. The defendants know and should have known that participation in and reporting of vaccinations to PHL Sec. 2168 is contingent in this case upon the City officials giving me access and sign in credentials for the purposes of accessing the CIR.

55. The defendants also have first-hand knowledge that the reason why my reports are missing is because the City officials have systematically been obstructing my access to NYCIR since 2006 by simply ignoring my applications for access to the CIR and failing to communicate with him regarding their status.

56. The facts related to this matter are discussed in detail in Nesselson 1 action against said defendants – See EX F hereto attached, my reply declaration in response to the declaration of Bindi Crouch, assistant commissioner of NYC DHMH and in further reply of declaration of Joseph

Gionannetti. Also annexed to EX F hereto are the declarations of Bindi Crouch and Joseph Giovannetti submitted in Nesselson 1.

57. The facts discussed in the affirmations attached as EX F are directly relevant to this case and to supporting my application for preliminary injunction against the systematic harassment investigation of the OPMC Director.

58. They are testimony to OPMC Director's and Commissioner's actual knowledge prior to the commencement of their investigations that the state defendants knew since 2007 that I was unable to report vaccines to the CIR because the City Officials simply barred my access by simply failing to process my CIR application in 2006 and refusing to communicate with me regarding either: (a) the status of my 2006 application and/or (b) the reason for their deliberate failure to process my application.

59. The facts stated in my declarations – EX F hereto also support the fact that the Commissioner himself through Giovannetti caused my second application for access to CIR which was submitted in February 2024 to be put on indefinite processing hold which continues through this date.

60. All of the statements made in my reply declaration in Nesselson 1 – EX F hereto under the penalty of perjury are incorporated by reference herein and for the sake of brevity the Court is directed thereto. A summary of those facts is set forth herein.

61. Specifically, in 2006 I came under a disciplinary investigation by the OPMC because my medical records regarding two patients did not reflect the administration of vaccinations of two patients with respect to whom I issued written certifications of vaccinations in accordance with PHL Sec. 2164(5) and 10 NYCRR Sc. 66-1.6.

62. I applied for access to the CIR in 2006 as soon as the reporting statute PHL 2168

came into effect because I was under investigation by the OPMC regarding the administration of vaccination to two patients. EX F hereto – my reply declaration.

63. However, in 2006 and then again after another application was submitted by me in February 27 2024 (EX F hereto) the city officials simply failed to process my application and were not communicating with me regarding the status of the same. Nor did they ever provide credentials to me for access to the CIR.

64. Thereafter, in 2007 the OPMC investigation culminated with the issuance of a public disciplinary order by the Board of Professional medical Conduct – EX G hereto. By its own terms the order commenced on November 4, 2027 and its 36 months term expired by its own terms at midnight on November 10, 2010.

65. The 2007 Order imposed strict probationary and supervision terms especially with respect to my vaccination practices (the cause of the issuance of the consent order). Consequently in addition to the probation monitor, a cadre of probation officers and OPMC staff were assigned to enforce the terms of the probation.

67. Frequent visits by the OPMC probations officers were made to my office during the terms of the probation for spot checking of medical records to ensure compliance with the terms of the probation with a focus on my vaccination practices.

68. In addition, according to the terms of the Order a practice monitor was appointed to monitor my records and my entire medical practice with a focus on my vaccination practices. The practice monitor had to submit periodic reports to the OPMC Director regarding his findings of the medical records audits and office visits during the probation period.

69. Therefore the net effect of the 2007 Order and of the probation terms therein was strict compliance with New York law and the terms of the Order which was focused on vaccination

practices. That included enforcement of strict compliance with PHL Sec. 2168

70. One of the catchall probation clauses in the 2007 was the condition that I comply with all of the statutes and regulatory provisions governing my practice of medicine. Clearly the reporting statute PHL Sec. 2168 was in effect during the entire probation period and the Commissioner, the OPMC Director and staff as well as me were acutely aware of its existence.

71. Because by time of the commencement of the probation period on 11/04/2007 I did not have access to the CIR and my 2006 application was not being processed by the City officials while any attempt at communication and contact regarding the same was being ignored, I had no choice but to actually disclose my inability to report my patients' vaccinations to the CIR to both the probation officers and staff and to the practice monitor.

72. Notably the 2007 Order did not impose any restrictions upon my vaccination practice of my pediatric patients.

72. A willful violation of PHL Sec. 2168 would have constituted an automatic default and violation of the probation terms which would have automatically resulted in my license revocation and further disciplinary sanctions after a hearing. See hereto.

73. It was during those discussions regarding my inability to report vaccinations to the CIR that the OPMC probation officers and staff repeatedly advised me that so long as I documented the vaccinations in the medical records and so long as I issued paper certifications regarding the vaccinations in accordance with the mandates of 10 NYCRR Sec. 66-1.6 there would be no violation of PHL Sec. 2168, and that moving forward my inability to report the vaccinations to the CIR would be neither a violation of the probation terms nor of the reporting requirements of PHL Sec. 2168.

74. Indeed during the entire probation term of the 2007 Order EX G hereto, neither the

Commissioner nor the OPMC Director nor their staff nor the probation monitor ever flagged me for violations of PHL Sec. 2168 nor did they ever demand that I stop vaccinating my patients while they had actual knowledge that I could not comply with the reporting requirements of the CIR for the foregoing reasons.

75. In short, the state officials had and still have or should have had actual knowledge that I had no access to the CIR during the first probation period; they had actual knowledge that I was not reporting vaccinations to the CIR because the City Officials were neither processing my application nor communicating with me regarding the status of the same. Yet they recognized that my inability to comply with the reporting mandates of PHL Sec. 2168 could not be a willful violation of either the probation terms or of any of the subsections of Education law 6530 which defined professional medical conduct. They never barred me from vaccinating my patients and in fact they offered representations and advice on how to get around the reporting requirements when the inability to report was not created by me.

76. The state officials' staff went further than to just ignore my inability to comply with the reporting requirements of PHL Sec. 2168. They made affirmative representations and statements on which I relied to guide my vaccination practices moving forward. In those statements they specifically represented that I would not be held responsible for the City Officials' obstruction of my access to the CIR through administrative fiat and failure to process my CIR 2006 application so long as I met the above referenced conditions, namely documenting in the medical records the information regarding vaccinations administered to my pediatric patients and issuing paper certifications regarding each vaccination pursuant to 10 NYCRR Sec. 66-1.6.

78. Consequently my entire vaccination practice from 2007 through October 2024 was governed by the guidance received from the OPMC Directors' staff all the way back since 2007.

That practice continued until July 2024 when the Commissioner and Mr. Giovannetti barred me from vaccinating my pediatric patients through internet posting and mass mailings made to school districts– EX F hereto, which held me out as a vaccine fraudster and as a willful violator of New York law. See Giovannetti declaration in Nesselson 1 as part of EX F hereto and exhibits attached to the declaration and my reply response to the same. I scrupulously followed the OPMC's and Commissioners' directives which were repeated during the extended period of probation of the 2011 Order which adopted the terms of the 2007 order.

79. The probation term of the 2007 unceremoniously came to an end in November, 2010 without any action, request for correction or anything else being directed by the OPMC physician towards me regarding my performance and practice of medicine during that time.

80. In 2011 the OPMC Director launched an investigation into my inability to pay $84,000 in malpractice insurance premium due to a family illness for which I incurred large expenses and my loss of the coverage of a 2 million dollar policy due to the same. Keeping the 2 mil malpractice policy was a requirement of the 2007 order.

81. In settlement of the investigation I agreed to a BPMC 2011 modification order which extended the terms of the 2007 Order by another 36 months commencing in November 2011 through November 2014. See Ex H hereto.

82. The same probation terms as the ones specified above from the 2007 Order were applicable to the second probation period. Once again I was unable to practice medicine without a practice monitor and once again my practice and medical records came under the scrutiny of the OPMC Director and therefore of the then Commissioner and their staff.

83. Once again my inability to report vaccinations to the CIR due to the City officials' obstruction of access was made known by me to the practice monitor and the OPMC probation

officers. Once again the Director of the OPMC through the then probations officers gave me the same directives as before: document vaccination in each one of the patients' records and provide the paper certifications documenting the vaccinations and I would not be in violation of the probation terms of the Order.

84. Once again I completed the probation term without incident and the Director of the OPMC as well as the OPMC officials never cited me for any violation of the Order and of the reporting statute PHL Sec. 2168.

85. Once again the Commissioner and the Director were on actual notice that the City officials were blocking my access to the CIR. Once again the Commissioner and the OPMC director had unfettered access to the CIR and to communications with the City officials to verify my account of the facts. And once again not even once did they find me in violation of the probation terms or of the vaccine reporting statute PHL Sec. 2168.

86. For an entire decade between the termination of the second probation period in November 2014 and October 2024 I have done that which the OPMC officials told me to do. I vaccinated my pediatric patients I documented the vaccines in the patient's medical records in accordance with 10 NYCRR Sec. 66-1.6 and I provided paper certificates for the school officials documenting the vaccinations.

87. One thing that is clear from all of the above facts is that at the time when the OPMC Director opened the so called investigation against me in July 2024, Director Bandago and the Commissioner had actual knowledge of the foregoing facts; they had actual knowledge of my inability to report vaccines to the CIR, of the fact that during the probation period of both orders the OPMC never conducted any inquiry nor did they ever discipline me for my inability to report vaccines to the CIR and of the fact that I was administering vaccinations to my patients; they were

aware of the fact that for some 18 years since 2007 I have been vaccinating my patients and providing paper certifications to school districts and they certainly were aware of the public orders of discipline of 2007 and 2011 with the same probationary terms as set forth above.

88. The past probation terms were successfully completed by April 2014 without any incident and without any action or warning of any type of misconduct from the OPMC regarding the reporting issue of PHL Sec. 2168.

89. The Commissioner and the OPMC Director also knew and should have known form all of the filings in Nesselson 1 – relevant parts annexed hereto as EX F (which pre dated the OPMC letter of March 14, 2025 and in which case the Commissioner is a named party) that since March 2024, the Commissioner himself became an active participant along with the City officials in the scheme to obstruct my CIR access prospectively and in perpetuity by using administrative fiat and directives given to schools on a website nonetheless to reject my paper vaccination certificates without affording me any due minimum process notice and opportunity to be heard.

90. Therefore the purported investigation conducted by the OPMC director into the reasons why I was unable to report vaccines to the CIR is in fact part of a systematic harassment pattern stated by the Commissioner in March 2024, as set forth below.

**(III) The third issue identified in the March 14, 2025 OPMC letter fails to identify any misconduct ground invoking the investigative jurisdiction of the OPMC Director.**

90. Next, the OPMC defendants further disclose in the March 14, 2025 that one of the subject matters to be discussed at the interview is my evaluation of patients for immunization exemptions and/or contraindications as well as your issuance of exemption letters.

91. I disclosed in full to the defendants the medical records of each and every one of the 20 patients named in the disclosure letter of March 14, 2025 .

92. Without exception all the medical records of the vaccinated patients include all of the vaccination records and certifications issued pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6.See EX B to the Amended Complaint less attachments. Therefore from the face of the medical records, defendants knew and should have known that none of the 20 patients were evaluated for vaccine exemptions nor were they ever provided with vaccine exemptions by me.

93. The defendants' notice to me stating that they wish to discuss a non-existing issue of vaccine exemptions and vaccine exemption evaluation exemplifies their use of the investigative process for the purposes of systematic harassment.

94. Based upon the plain entries in the medical records of all 20 patients identified in the March 14 letter and based upon public information available from internet postings, the demand for information regarding vaccine exemptions and evaluations did not apply to me at all. I believe that the language in the letter was erroneously transcribed from a boilerplate letter belonging to a group of physicians who did provide vaccine exemptions to their patients.

95. In short, from the face of the medical records the OPMC Director knew and should have known that no vaccine exemptions were written by me and no evaluations were conducted on any one of the 20 identified patients for the purpose of issuing vaccine exemptions .

(IV) **The remaining issues identified in the March 14, 2025 letter fail to state any misconduct grounds which would trigger the investigative powers of the OPMC Director.**

96. The remaining issues identified in the March 14, 2025 letter also do not state any grounds of professional medical conduct but rather inject red herrings into the OPMC Director’s participation in the systematic harassment of me through the use of the investigative process.

97. The March 14, 2025 letter states that the state officials wished to ask me about non-descript discussions on undefined matters which I may have had with my pediatric patient's

parents or guardians since 2009.

98. The identification of such an open ended non-descript issues which involve juggling my memory over a period of time that exceeds 16 years since 2009 over non-descript conversation is also a part and parcel of the use of the investigative process used for the purposes of systemic harassment by the Commissioner and now the OPMC Director. The nonspecific non-descript issue is not an issue at all and it does not comport with the notice requirements of PHL Sec, 230(10)(a)(iii)(A).

99. Finally, the defendants further identified "circumstances surrounding my Board order 07-250 of November 21, 2007 and the modification Order of April 13, 2011" as a subject matter for discussions.

100. Again, wanting to revisit the circumstances of the now defunct orders which contained specific probation terms which were satisfied in full respectively on November 21, 2010 and April 13 2014 is not a bona fide investigation into any subsequent conduct because both orders expired by their own terms.

101. Ironically it was during the probation terms of those specific orders that the defendants did acquire specific knowledge of facts regarding the central issue in the litigation pending sub judice and in this case which was the artificial creation of the "violation" of PHL Sec. 2168 through the denial of access to the CIR by administrative fiat.

102. The OPMC's grounds for investigation identified in the letter of March 14, 2025 by definition and by process of elimination only calls into consideration the provisions of Education Law Sec. 6530(16). That statute defined professional misconduct as " A willful or grossly negligent failure to comply with substantial provisions of federal, state, or local laws, rules, or regulations governing the practice of medicine.". In this case the state law in question would have

been PHL Sec. 2168 and the focus of the investigation would have been my deliberate failure to report vaccinations to the CIR had access been properly provided and not obstructed by the City Officials.

103. However, for all of the reasons articulated above, the factual pattern in this case which the Commissioner and the OPMC Director are and should have been aware of, simply does not fit the definitions of Education Law Sec. 6530(16) so as to trigger the investigative authority of the OPMC Director.

104. Simply put by definition there can be no willful or grossly negligent violation of the vaccine reporting statute PHL Sec. Since 2006, city officials—and since March 2024, the Commissioner and relevant state officials—have knowingly and intentionally impeded my access to the CIR. Both the Commissioner and the Director have been aware, or reasonably should have been aware, of this issue since 2007.

105. There can be no willful or grossly negligent violation of the vaccine reporting statute and there can be no vaccine fraud where I scrupulously followed the directions of the OPMC personnel since 2007 by documenting vaccinations in medical records and issuing paper certifications documenting the same.

106. The remaining issues identified in the March 4, 2024 letter either: (a) do not exist (in the case of New York State Student Identification System and assessment for vaccine exemptions and issuance of vaccine exemptions); (b) are undefined in accordance with the legislature's mandate in the Public Health Law (in the instance where the OPMC wants to juggle my memory of discussions had with unidentified parents of patients over a period in excess of 16 years regarding unidentified issues) or are quite obvious from the face of the medical records themselves (in the case of the vaccine documentation and certification).

107. For the above referenced reasons, the OPMC Director's and the Commissioner's purported investigation of professional misconduct issues which by definition do not exist as well as other matters which are not substantively relevant to me at all amount to harassment and to an act of providing cover for Commissioner's own violation of my due process rights pending sub judice in Nesselson

**(IV) <u>First Amendment continuous violations</u>.**

108. Most importantly, in addition to the fact that no legitimate issues exist for a bona fide professional medical misconduct investigation as identified by the OPMC Director in the March 14, 2025 letter, and as further stated in this declaration, the only purpose for this continued so called "investigation" is to intimidate me and stifle my Frist Amendment rights to petition the courts to stop the harassing behavior of the state officials through the use of the state investigative powers and under the color of New York law.

109. The facts supporting this proposition are clear and unequivocal. By the time Director Bandago's declaration was submitted in this case DE 24 which affirmatively states that **the OPMC investigation is still ongoing**, both the Commissioner and the OPMC Director had actual knowledge of the facts as stated above and in EX F hereto form the submissions in Nesselson 1 and form their own knowledge and dealings with me during the probation period.

110. Nonetheless, the Director decided to continue this purported investigation knowing that there are no facts under which the issues stated in the letter of March 14, 2025 exist or ever existed. The OPMC director was further aware that between 2007 and 2024 no violations of any statute were found to exist by the Director or anyone else because I was unable to file reports with the CIR. Nonetheless the Director insists this this is still an ongoing investigation.

111. Because no legitimate facts as stated in EX C hereto or in the declaration of the

Director exist to support the instant OPMC "investigation" there no escaping the conclusion that the same is maintained for systematic harassment purposes and for the purposes of intimidation and stifling my First Amendment right to petition the courts for relief and to coerce me into discontinuing the present litigation.

112. In addition neither the OPMC Director nor the commissioner receive the benefit of the doubt of their claim that the OPMC so called investigation is a legitimate and that the OPMC Director has unfettered powers to conduct an inquiry because for the following facts militate in favor of a finding to the contrary:

(a) contrary to the statements made by Director Bandago, the investigation which was opened with the OPMC letter of July 2024 was not a continuation of the inquiry opened in 2022 on the complaint of Michael Hardy regarding his daughter MH for all of the reasons articulated above. Rather the 2024 investigation was started by demand of medical records of the names of new patients never obtained before by the OPMC. The first demand was made by the OPMC letter of July 27, 2024. That date is on or about the same time as the subpoena issued by an investigator of the DOH, Mr. Giovannetti – EX B hereto. Upon information and belief the names of the ten new patients were obtained from the four complaints filed by NYC School nurses filed with the City Officials who first handed the same complaints over to Mr. Giovannetti in March 2024. Mr. Giovannetti upon information and belief turned in those named to the OPMC director with instructions from the Commissioner to commence the initial purported staged investigation against me in order to support the systematic harassment investigation of Mr. Giovannetti as described below;

(c) To the extent that the Director of the OPMC contends that the ongoing investigation is legitimate and not a part of a systematic harassment pattern perpetrated under the color of the

New York disciplinary investigative process and of a conspiracy between the Commissioner and the Director to systematically harassment , and to the extent that that the OPMC Director is supposedly investigating the complaints of the school nurses filed with the City officials in 2023 and 2024 and my inability to participate in the CIR reporting program, that contention is contradicted by existing facts. Specifically, the OPMC director knew and should have known as of July 27, 2024 when the investigation was first opened that it was the Commissioner and Mr. Giovannetti who directed the City Officials as of March 2024 to "put on hold" my CIR access application of February 2024 and not to process the same indefinitely. The Director also knew and should have known that the City Officials followed the Commissioner's and Giovannetti's orders through this date. After the Commissioner caused my inability to report vaccinations by blocking the processing of my application as of March 20244 – See Ex F hereto, and in turn depriving me from commencing a state action under CPLR Article 78, the OPMC director jumped in and subjected me immediately to this ongoing investigation based upon my inability to comply with PHL Sec. 2168 which itself was caused by the Commissioner's own directives.

(d) To the extent that the Director of the OPMC contends that the opening of the OPMC investigation in July 2024 was for the purposes of looking into my inability to report vaccinations to the CIR before March 2024, and therefore it is a legitimate investigation and not a part of the conspiracy to besmirch my reputation and systematically harass me, the contention also fails based upon the facts of this case. As discussed in this declaration both the Commissioner and the Director of the OPMC know knew and should have known at the time of the opening of this investigation that access to the CIR has been systematically denied by the City officials from 2006 through 2024 by simply failing to process my CIR application for access submitted at that time. See EX C hereto. In addition, the Commissioner and the OPMC Director knew and should have known at the time

when this investigation was started in July 2024 that during the period of 2007 and 2014 I was under the magnifying enforcement glass of the Commissioner and of the OPMC probation personnel under the two disciplinary orders of 2007 and 2011 EX D and E hereto. Assuming arguendo that the OPMC Director did not know about the communications which I had with the probation officers regarding my inability to report to the CIR and the Commissioner's and Director's representation made to me as set forth in this declaration, during the probation period, the least she could have done had she acted in good faith was to ascertain the facts from the Court papers in Nesselson 1 that: (i) there was a probation period and by necessity there was a need for compliance with statutory requirements, including PHL Sec 2168 reporting requirements between 2007 and 2014; (ii) the probation terms and supervision focused on my vaccination practices which included compliance with the statutory requirements of PHL Sec. 2168; (iii) no probation violation and no violation of PHL Sec. 2168 was found to exist during the terms of the probation; (iv) the court documents in Nesselson 1 – EX C hereto clearly state that during the period of 2006 through 2017 I did not report vaccinations to the CIR – declaration of Bindi Crouch; (v) neither the OPMC nor the Commissioner found any violation of the reporting requirements of PHL Sec. 2168 to exist despite their knowledge that I had a Board imposed directive to comply with the BPMC Orders EX D and E; (vi) Based upon the statements made in Nesselson 1,EX C the OPMC Director and the Commissioner knew and should have known that for a period for 17 years between 2007 and 2024 I have been administering vaccinations and providing paper certifications in accordance with the Commissioner's own regulations and PHL Sec. 2164(5) without anyone ever questioning my inability to comply with the CIR requirements; (vii) it was the Commissioner through Mr. Giovannetti that caused my 2024 application for CIR access to be put on administrative hold indefinitely without processing the same; (viii) once the Director and the Commissioner were

made aware of the status of affairs through both the Nesselson 1 documents stating in no uncertain terms the representation made by them to me during a whopping 7 years' probation term and of how I vaccinated my patients and provided paper certificates to school district, the Director still maintains that the purported investigation is "ongoing" notwithstanding the fact that, as set forth above no unprofessional medical conduct took place as defined by Education law Sec. 6530.

113. In short, where by process of elimination no grounds exist for a disciplinary investigation, the conclusion that the OPMC Director's present investigations is part of a systematic harassment and of an attempt

114. For the reasons referenced above and below, the Defendants' purported investigation of professional misconduct issues which by definition do not exist as well as other matters which are not substantively relevant to me at all amount to systematic harassment which in turn amounts to a due process violation and to an act of providing cover for Commissioner's own violation of my constitutional rights discussed hereinafter.

115. The OPMC investigative and prosecutorial process as well as that of the Commissioner is now scrutinized by members of Congress and the US Department of Justice which has been asked to investigate the New York officials for constitutional violations. EX G to hereto.

116. In a relatively recent letter dated February 6, 2026 - EX G hereto, members of Congress have asked the US Justice Department to investigate the state officials' actions against physicians in this state who were falsely accused of falsifying records and were cut off from vaccinating their pediatric patients in the same manner as the as I have been cut off since March 2024 and July, 2024.

117. Namely, the congressional letter accuses the New York state public officials of

using their investigative process, official internet public websites and email blasts to publicly accuse physicians and specifically me of falsifying records, namely vaccine exemptions, and directing school districts to reject their paper vaccine certificates while blocking their access to the centralized vaccine database.

**(v) Additional facts relevant to the conspiracy of systematic harassment - the sudden so called "reports or complaints" from school nurses which are used by the defendants as a pretext to systematically harass me since March 2024.**

118. All of the facts stated herein are not presupposed by me as stated in defendants' initial motion to dismiss the Complaint. They are substantiated and Amended by the City officials' statements contained in the declaration of DHMH Assistant Commissioner Bindi Crouch in Nesselson 1. EX F hereto.

119. As stated by City DHMH Assistant Commissioner Bindi Coruch in Nesselson 1, the City officials reported four cluster "reports" and "complaints" which they received between July 2023 and May 2024. EX F hereto. Admittedly according to the Crouch declaration, the reports stated no violations whatsoever of any statute as applicable to the facts of this case. Uniformly the reports initiated by school nurses who upon information and belief acted in concert with each other, labeled me as a healthcare practitioner who "fraudulently" submitted vaccine certifications because the nurses could not find any reports correlating to the vaccinations in the CIR database.

119. Around July, 2023 I received a telephone call from a nurse in a New York City school asking about the vaccination status of one of my patients. She stated that she could not find any reports of the vaccination in the CIR and that she was going to report me to the DHMH that I was providing fraudulent paper certificates. I relayed that the pediatric patient was vaccinated and that the paper certificate was produced. She said, "I don't believe you".

120. Thereafter, on or about the same time, in July 2023, as disclosed by the certification of assistant DHMH commissioner Bindy Crouch in Nesselson 1, EX F hereto, a complaint came in relaying the same exact facts expressed by the nurse who spoke to me in July. In reality as it can be seen from the Amended complaint, the nurse was not reporting any real vaccine fraud. She was reporting that, not surprisingly, she could not find any information in the CIR which cross referenced the paper certification.

121. Then according to the Crouch declaration in Nesselson 1, on or about October 2023, another complaint came presumably from another school nurse who, upon information received from my patient's parents and upon my belief formed based upon the same information, was the friend of the first one. The second complaint was in the same form and substance as the one in July. The nurse from the other school all of a sudden was prompted to cross reference my vaccination paper certificate to the CIR database and decided that my vaccinations and paper certifications were fraudulent because unsurprisingly she could not find any reports in the CIR paralleling the paper certifications.

122. The City officials' admitted response to the first two complaints was not to research their history of systematic obstruction of my access to the CIR as stated above and in my Nesselson 1 declaration EX F hereto.

123. Rather, their explanation set in the Crouch declaration (EX F) was that their records reflect that I had access to the CIR between 2007 and 2017 and that they unilaterally revoked the same because I did not use the CIR. See Crouch declaration EX F hereto. No authenticated "documentation" and nothing was offered in support of this empty explanation. Nor could there be anything offered.

124. This statement simply makes no sense in light of the facts stated above because: (a)

I was never given any electronic access codes or sign in credentials into the system and none were provided by Assistant Commissioner Crouch in support of her statements; (b) the City officials simply refused to communicate with me regarding my numerous inquiries pertaining to my 2006 CIR access application status; (c) the City officials never gave me any notice or anything advising of any type of status of my application; (d) had I had access to the CIR during the seven years' probation period of 2007-2014 which extended for most of the duration of the period when Crouch contends that the City Officials gave me access to the CIR (2006-2017), it would be reasonable to infer and deduct that at least one of the cadre of OPMC probation officers and staff who tightly supervised my medical practice and especially my vaccination practice and patient records or the OPMC probation monitor himself would have flagged me for a probation violation, namely willful failure to comply with the reporting requirements of PHL Sec. 2168 and my license would have been revoked. None of that has happened; (e) instead the OPMC officials and probation officers as well as the practice monitor were placed on actual notice that the City officials were neither processing my application nor returning my calls about the status of my application for access to the CIR as soon as the first probation period started in 2007 (EX D hereto); (f)subsequently thereafter when the probation period started again in 2011 under the modification order of 2011 (EX H hereto) the same cadre of probation supervising OPMC officials and officers as well as the practice monitor were made aware again of the satiation regarding my lack of access to the CIR; the response to both the actual notices from both the OPMC officials as well as the probation monitor were identical: continue to vaccinate the patients and document the records of each patient with the vaccination administered and issue paper certification which contain the information mandated by Commissioner's regulation (10 NYCRR Sec. 66.1.6) namely, the name and date of birth of the patient the date of the vaccination, the name of the vaccine administered, and affix my

signature to it as the healthcare practitioner who administered the vaccination.

125. All of the above facts point to the inescapable conclusion that the OPMC Director's so called investigation is part and parcel of the systematic harassment which commenced with Commissioner's and Giovanetti's directives to the City officials in March 2024 to keep my CIR access application on hold indefinitely.

126. Returning now to the actions of the City officials after the receipt of the first two complaints in 2023, they were not at all in line with reality and what in fact was happening and not in line with the facts known to the City Officials at the time when they received the purported complaints.

128. The City officials did not investigate their own obstruction of my access to the CIR since 2006. Nor did they investigate the fallacy of their own contention that I had access to the CIR between 2006 and 2017 which they purportedly revoked without any notice or opportunity to be heard in 2017. See EX F – Crouch Declaration and my response declaration in Nesselson 1.

129. The first response to the nurses' complaints that the vaccine certifications provided by me to the NYC schools could not be found in the CIR reporting database was to have their own investigator call my office and inquire whether I was vaccinating my patients. See EX F Crouch declaration in Nesselson 1 and mt declaration in response to the same. Once they received the answer in the positive they declared me to be in violation of the reporting statute PHL Sec. 2168 however they took no action against me for the same nor did they ever communicate with me about what their determination was. See EX F hereto Crouch Declaration and my response declaration in Nesselson 1.

130. Succinctly stated, the City officials obstructed my access to the CIR systematically since 2006 and then decided that I was violating the vaccine reporting statute PHL Sec. 2168

because I was following the directives of the Commissioner and the OPMC Director given to me through their OPMC probation officers during my probation periods which began in 2007 and ended in 2014.

131. In chronological sequence of events, after learning of the threats made by school authorities to my patients to invalidate the paper certifications because the vaccines were not reported to the CIR and because the paper certifications could not be correlated to CIR data (an empty threat made without authority as discussed in the memorandum of law, or about February 27, 2024, I successfully submitted a new application for access to the CIR to the City officials and received confirmation of the same. EX J hereto.

132. The application receipt - EX J hereto - directed me to contact specific telephone numbers listed therein for the status of my application and for the issuance of sign in credentials. I did so numerous times between February 2024 and November 2024 to no avail. No communications regarding the status of my application was returned by the City Officials.

133. I have further learnt from the City officials' submission in Nesselson 1 that between January 2004 and May 2024 they received two additional complaint reports from two unidentified school sources. According to the Crouch declaration EX F hereto, the two additional reports stated the same thing like the prior two in June and October 2023, namely that the nurses could not verify on CIR the information which appeared in my paper records.

134. The conduct of the City Officials in handling my February 2024 application for access to CIR was identical to their conduct back in 2006. The officials simply did not process my application; they failed to return my calls and respond to my communication regarding the status of the application and simply ignored my inquiries regarding the same. See Ex F hereto my reply declaration to Giovannetti and Crouch declarations in Nesselson 1.

135. By March, 2024, as City Assistant Commissioner Crouch states in her declaration – EX F hereto the City Officials contacted the state defendants for advice in how to proceed on my CIR application and further to report the four complaints received by the City stating that my information appearing in the paper certifications did not appear in the centralized CIR database. See Crouch declaration EX F hereto.

136. In March 2024 Mr. Giovannetti's directives to the City officials were to place the application on indefinite administrative hold without any action taken on it and without any notice and opportunity to be heard regarding my CIR application and the reason for withholding the same. See EX F hereto – both declaration of Bindi Crouch and Josep Giovannetti confirm this fact.

**(vi) The Commissioner's and the OPMC Director's own involvement in the conspiracy to use the state statutes for the purposes of engaging in systematic harassment.**

137. In order to further understand the factual connection of the conspiracy between the OPMC Director, the Commissioner and Giovannetti to violate Plaintiff's due process rights through systematic harassment.

138. The systematic harassment through the use of the state investigative process of the defendants herein started with the issuance of a subpoena dated July 22, 2024 – EX B hereto which made an open ended demand for vaccination records of all of my patients From January 1, 2019 through the date of the subpoena July 22, 2024. The subpoena does not state any specific names of patients, does not restrict the request to any specific number of patients.

139. While I was busy upon the prompting of my ex counsel preparing some 323 medical records in response to the subpoena, Giovannetti and the Commissioner were busy besmirching my reputation without a hearing and opportunity to be heard by setting up a website in 2024

accusing me of being a vaccine fraudster. The website can still be found at "School Vaccination Fraud Awareness" at https://health.ny.gov/prevention/immunization/schools/fraud.htm.

140. According to the Giovannetti declaration in Nesselson 1 EX F, the web site was set up by the Commissioner and Giovannetti for the purposes of “informing” school districts that my access to CIR was revoked and that the schools should not accept my paper certifications because I was unable to report vaccines to the CIR. See Giovannetti declaration EX F hereto.

141. However in reality the web site was used as an execution and carry out of a sentence and an order which was never issued by the Commissioner. The posting besmirched and continues to besmirch my reputation by falsely holding me out to the schools and the public as a vaccine fraudster and at the same time summarily affecting my legal status as a physician who, from the date of the posting onward was never able to vaccinate his patients because Mr. Giovannetti and the posting simply said so.

142. This exactly the stigma plus standard discussed in the memorandum of law and recognized by the Courts in the Second Circuit which imposed a mandate that in such cases due process is invoked and the licensee, namely me has to be given an opportunity to a hearing to clear my name. No such hearing was ever offered by the Commissioner in regard to the accusations appearing in the first posting on the web site.

143. This was the beginning of the legal fiction created by Mr. Giovannetti and the Commissioner which drives the systematic harassment which has not stopped since the posting was made public in July 2024.

144. The legal fiction created by the Commissioner and Giovannetti is that they can first obstruct access to the CIR though administrative fiat by barring the City officials from processing my application – Crouch Declaration EX F hereto stating that Giovannetti ordered the City

officials to put my application on hold indefinitely and the City Officials executed that directive. That hold is still in place. The further legal fiction is that where a healthcare practitioner cannot report the vaccinations to the CIR because his access is and has been knowingly obstructed by the City officials until 2024 and by the Commissioner and the City Officials after Marh 2024, a healthcare practitioner is blocked from vaccinating his patients and submitting paper certificates pursuant to 10 NYCRR Sec. 66-1.6 because such vaccinations are administered in violation of PHL Sec. 2168.

145. This legal fiction cannot be found either anywhere in either PHL Sec. 2168, or within the mandatory vaccination statute PHL Sec. 2164 or anywhere else. It is the predicate pretext for the bad faith systematic harassment investigations conducted by the OPMC Director and the Commissioner to perpetuate the systematic harassment upon be by using the cover of the state investigative statutes.

146. This fictitious theory is stated in no uncertain terms in the second posting EX K hereto which still remains on the public web site at https://health.ny.gov/prevention/immunization/schools/fraud.htm – and which sates as follows:

> Public Health Law requires that any provider who administers a pediatric vaccination to a person less than nineteen years of age report the vaccination to the New York State I Immunization Information System (NYSIIS) or, in New York City, the Citywide Immunization Registry (CIR). *The Department of Health may determine that any vaccination administered, or purportedly administered, in violation of Public Health Law is invalid for purposes of satisfying New York's school vaccination requirements. Each of the providers listed below is either suspended from, terminated from, or otherwise without access to NYSIIS, CIR, or both. Schools may not accept "paper-only" records of pediatric vaccinations from these providers as of dates specified below,* ***, as such vaccinations were necessarily administered in violation of Public Health Law.*** *Schools are encouraged to check this list regularly for any updates and changes.*
>
> Mark Nesselson, MD – Is based in New York, NY and does not have access to either the Citywide Immunization Registry or the New York State Immunization Information System. Paper-only records of vaccinations administered after 07/31/2024 from this provider must not be accepted.

146. As it can be seen from the accompanying memorandum of law neither PHL Sec. 2168, nor the mandatory vaccinations statute PHL Sec 2164 nor any other statute provides that inability to report vaccinations to the CIR acts as a bar to a healthcare practitioner providing vaccinations to his pediatric patients and provide pare certification of such vaccinations in accordance with Commissioner's own regulation 10 NYCRR Sec. 66-1.6.

147. As it can be seen from the accompanying memorandum of law the Commissioner's and Giovannetti's representations to the contrary in the public post stating that vaccinations provided without reports to the CIR amount to fraudulent vaccines is a knowingly false statement as is the statement that such vaccinations are a violation of New York law. The are not.

148. The vaccination administration and certification part is governed by PHL Sec. 2164 and in particular 2165(5) while the definitions of what constitutes a legal vaccine certification which includes the paper certifications provided by me are governed by Commissioner's own regulations 10 NYCRR Sec. 66-1.6. The administration and certification of vaccines is an issue which is separate and apart from the reporting requirements of PHL Sec. 2168.

149. The mandatory reporting statute PHL Sec. 2168 never provided and does not provide that in the absence of CIR reporting the healthcare practitioner is automatically barred from administering vaccinations and the schools can be ordered by public posting and mass emails to reject the healthcare practitioner's paper vaccinations certifications.

150. As stated in the Amended Complaint and in the accompanying memorandum of law, the net effect of the use of the foregoing website by Commissioner and Mr. Giovannetti was the official creation and use of a scheme by the state officials to bypass formal hearings and the formal procedure of PHL Sec. 12-a which provides the only legal manner in which the Commissioner can make determination if "*any vaccination administered, or purportedly*

*administered [by me], was in violation of Public Health Law, was invalid for purposes of satisfying New York's school vaccination requirements or " [was] necessarily administered in violation of Public Health Law.*

151. After the knowingly false postings were made which besmirch my reputation and holds me out as a vaccine fraudster and a knowing violator of PHL Sec. 2168, and then changes my legal status solely through directives given to schools in the postings to reject my paper certifications, Giovannetti and the Commissioner purposefully further damaged my reputations and changed my legal status, this time through an email blast, nonetheless. The email ballast was a fact an order issued to school districts to reject my paper certifications and stating that I cannot vaccinate patients in the absence to the CIR. See Giovannetti declaration in Nesselson 1 part of EX F hereto thereto.

152. There is no statute which empowers either the Commissioner or Giovannetti to rule by email blasts and change my legal status through such medium. See memorandum of law.

153. In addition, after assuring me since 2007 that my recording of vaccinations in the medical records and the issuance of paper vaccine certifications in accordance with Commissioner's own regulations and PHL Sec. 2164(5) was perfectly legal and that no violations of the law occurred or will occur if I follow such practice, and after knowingly directing me to proceed as stated above with the knowledge that the City defendants were denying me access to the CIR and after the Commissioner and Giovannetti themselves ordered the city officials not to give me access to the CIR indefinitely then they turned around and sought to investigate and prosecute me for the very same situation which they themselves created. That situation is my inability to make any reports to the CIR since 2006 which has been and is being perpetuated by Commissioner's systematic harassment scheme described herein.

154. For all of the legal reasons articulated in the memorandum of law the Commissioner's actions of prospectively barring me from participating in the CIR, declaring me as a vaccine fraudster and then falsely representing that my vaccinations are administered necessarily in violation of the PHL without any notice and opportunity to be heard amount to unconstitutional action and a denial of my due process rights through systematic harassment which meets the stigma plus test set by Second Circuit jurisprudence as articulated in in the accompanying memorandum of law.

155. In addition the directives given to school authorities by Giovannetti and the Commissioner in the postings and in mass mailing directing them to reject paper only bona fide vaccine certifications issued by me to my pediatric patients amount to an ultra vires action of the state officials which is unauthorized by any provision of New York law. See Giovannetti declaration – EX F hereto and exhibits annexed thereto. See memorandum of law.

156. There is no authority or provision anywhere in either the reporting statute PHL Sec, 2168 or the mandatory vaccination statute PHL Sec. 2164 or anywhere else which empowers the Commissioner to simply take official state action through the posting on the internet site devised by the Commissioner and simply invalidate perfectly legal certificates of vaccination provided by me to my pediatric patients pursuant to PHL Sec. 2164(5) and 10 NYCRR Sec. 66-1.6.

157. At the same time the postings had the net effect of besmirching my professional reputation and changing my legal status to a vaccine fraudster who violates New York law for failure to report vaccines to the CIR and for administering vaccinations in violation of the Public Health law.

158. All of the above actions of the Commissioner and Giovannetti are relevant to the OPMC parallelling "investigation" designed to support and join in the systemic harassment

perpetrated by the State defendants and the OPMC director jointly and in conspiracy with each other.

159. It is on the background of these unconstitutional and outright illegal actions of the Commissioner and in support of the same that the OPMC director launched and is continuing to conduct the current investigation against me for the purposes of commencing the formal disciplinary process in bad faith and in support of the Commissioner's continued due process violations.

160. The Director knows and should know and should have known that none of the issues identified in the March 14, 2024 letter are legitimate grounds of medical misconduct. Nonetheless even after I pointed out to the Director that the investigation is conducted with her knowledge that no violation of the PHL took place, she is keeping the investigation open perpetually with no action and with no sign of closure and for the sole purpose of harassing me.

168. As it can be seen from the accompanying memorandum of law, the use of the New York disciplinary investigative process for the purposes of staging a theatrical bad faith administrative prosecution and for the purposes of systematically harassment, based upon scenarios which were created by the Commissioner and the OPMC director themselves and of which they have had knowledge since 2007 amounts to systematical harassment and is a violation of my due process rights.

**(v) New acts amounting to systematic harassment.**

169. So as to emphasize and underscore my argument of systematic harassment, in May and June 2026 Giovannetti issued new subpoenas to schools in Long island and to the new York department of Education seeking to gather the same exact medical records of mu patients whose records were in 2024 by me and my old attorney in response to the subpoena of July 22, 2024.

170, While the extent of how many subpoenas were issued in May to Long Island school districts is unknown, I did receive communications from seven legal guardians of my long Island patients whose children attended various schools in Long Island. The FERPA notices from those schools are annexed hereto as EX L. Without exception, the records sought by the subpoena were identical to the ones which Giovannetti and the Commissioner have in their possession since 2024.

171. I request leave of court to provide for in camera review to the Court the medical records of the same patients in Long Island whose records Giovannetti had since 2024 and sought by separate subpoenas in May 2026. Without exception the names of the students appearing on the Long Island school notice match the same names appearing in the compiled document list of the patients whose record were given to Giovannetti in 2024 by my past attorney and me

171. At about the same time Giovannetti issued one subpoena with a list of 55 patients whose records he sought from the NYC school district in June 2026. EX L hereto. While not all of the patients on the list called me to express outrage, the name of the patients who did call me

in 2026 are the same names of the patients whose vaccination records were provided to Giovannetti in 2024 in response to his July 22, 2024 subpoena EX A.

172. As it can be seen from the accompanying memorandum of law, there is no legitimate purpose for seeking to obtain medical records from the school districts of patients whose records Giovannetti already had since 2024.

173. The subpoenas issued in 2026 – EX L hereto were part of the systematic harassment which the state officials have engaged against me and which continues in perpetuity and though this date.

174. For all of the reasons articulated above and for all of the reasons articulate din the Amended Complaint and the accompanying memorandum of law my instant motion for preliminary injunction should be granted in all respects.

175. I declare under the penalties of perjury that all of the statements made hereinabove

are true to the best of my knowledge and that I am aware that if they are knowingly false I am subject to punishment.

Dated: August 25, 2026

Mark Nesselson MD